THE STATE, ABRAHAM ANDERSON ET AL., PROSECUTORS,
v. THE CITY COUNCIL OF THE CITY OF CAMDEN
AND WILLIAM B. DOYLE.

1. The city council of Camden has power, by virtue of the seventeenth
section of the city charter, to establish the office of "transcribing clerk
in the office of the collector of delinquent claims," and to prescribe
the duties of such office. By virtue of such power the said council
passed an ordinance creating said office and fixing the duties to be per-
formed by the incumbent. Said ordinance was introduced at a special
meeting called by the president, at the written request of more than
one-fourth of the total membership of council, and was finally passed
at the same meeting by a vote of more than two-thirds of the members
of that body, after having been read three times, twice at length and
once by its title. *Held,* that such ordinance is valid.

2. It is only in perfectly plain cases that courts are justified in vacating
statutes on the ground that they do not comply with the constitutional
provision which requires the object of every act to be expressed in its
title ; and the fact that the object of an act might, with propriety, be
expressed more specifically in its title than the legislature has seen fit
to do, is no reason for declaring it void, so long as the title fairly
points out the subject of the legislation.

3. Where a statutory provision of doubtful import has been incorporated
into a subsequent statute, after it has received a long-continued prac-
tical construction, the interpretation given to such provision will be
considered to have been adopted as well as the words.

On *certiorari.*

Argued at November Term, 1895, before Justices DEPUE,
VAN SYCKEL and GUMMERE.

For the prosecutors, *Edwin G. C. Bleakly* and *David J.
Pancoast.*

For the defendants, *J. Willard Morgan.*

The opinion of the court was delivered by

GUMMERE, J.  The writ in this case brings up for review
an ordinance of the city of Camden, establishing the office of
transcribing clerk in the office of the collector of delinquent

claims, passed June 6th, 1895, at a special meeting of the city council held on that day. The validity of this ordinance is attacked by the prosecutors upon numerous grounds, which will be considered in their order.

The first ground relied upon is that the city council of Camden had no legal power or authority to pass the ordinance.

Section 17 of the charter of the city of Camden (*Pamph. L.* 1871, *p.* 220) empowers the city council to elect and appoint, and also to prescribe the duties of, all the subordinate officers of the said city, as well those who are named in the charter as those who are not named therein, but who may, in the opinion of council, be necessary for the better ordering and government of the city. The office which has been created by the ordinance under review·is a subordinate one; whether its creation was necessary for the better ordering and government of the city, was a question which the legislature left to be determined by the city council; that body, by the passage of this ordinance, has declared that, in its opinion, it was necessary, and its decision must be accepted as finally settling the question. But it is said that council has overstepped the authority conferred upon it by the charter—first, because the ordinance provides that the incumbent of the newly-created office shall hold the same for a term of two years, and second, because the duties imposed by the ordinance upon this new official are imposed by the city charter upon certain other officials.

As to the first of these reasons: The contention is that the city council, being a yearly body, cannot regulate the appointment of its officers for more than one year; that to hold otherwise would be to detract from the power of future city councils. This contention is without force. While it is true that one council cannot by ordinance bind a subsequent council, it is not true that, for that reason, an ordinance which, by its terms, continues in force after the council which passed it has ceased to exist, is invalid. On the contrary, every such ordinance is valid and effectual until it expires by its own

limitation, or is repealed either by the council which passed it or by a subsequent council.

Nor is there anything in the objection made to the validity of the ordinance because it imposes upon the new official, created by it, duties which the charter requires to be performed by other officials, for an examination of the charter, and a comparison of it with the ordinance under review, will disclose that the objection rests upon a misapprehension of facts. The charter does not impose upon other officials the duties which this ordinance requires to be performed by the transcribing clerk in the office of the collector of delinquent claims.

The next objection urged against the ordinance is that it was introduced at a special meeting of council which, it is insisted on behalf of the prosecutors, was not called in the manner required by law; and further, that it was finally passed at the same meeting, in violation of the city charter, which, it is said, forbids the passage of an ordinance at the same meeting at which it was introduced.

The return to the writ shows that the meeting was called in accordance with the provisions of an act of the legislature entitled "An act concerning cities," approved March 22d, 1895. *Gen. Stat., p.* 803. That act provides that, in all cities of this state, it shall be the duty of the president of the city council, board of aldermen or other governing body, on the request of one-fourth of the total membership of such body, in writing, addressed to him, to call a special meeting thereof. The meeting in question was called by the president of council upon the written request, addressed to him, of five of the members of the city council out of a total membership of nineteen, and it is not denied that this was a compliance with the requirement of the act of 1895; but it is contended that this statute is unconstitutional, and that the only method in which a special meeting of the city council can be legally called is in the manner specified in the city charter, which authorizes the president to call such meeting only when requested, in writing, to do so by at least eight of the members.

The objection made to the law of 1895 is that it fails to comply with the constitutional requirement that "every law shall embrace but one object, and that shall be expressed in the title," because the title of the act fails to express its object.

In the case of *Richards* v. *Hammer*, 13 *Vroom* 435, decided in this court, it is stated that it is only in perfectly plain cases that it is proper for the courts to vacate statutes on the ground now in question, and this declaration is quoted with approval by the Court of Errors and Appeals in *Payne* v. *Mahon*, 15 *Vroom* 213, 216. The criticism upon the title is that "An act concerning cities" expresses nothing definite and could embrace any one of a thousand or more different subject-matters connected with the affairs of cities. But the fact that the object of the act might, with propriety, be expressed more specifically in its title than the legislature has seen fit to do, is no reason for declaring it void, so long as the title fairly points out the subject of the legislation. *State, Walter, pros.*, v. *Town of Union*, 4 *Vroom* 350; *Van Riper* v. *North Plainfield*, 14 *Id.* 349; *Bumsted* v. *Govern*, 18 *Id.* 368. It seems to me instead of its being perfectly plain that the title to this act does not express its object that the contrary is the case, and that its title fairly indicates the general object of the law. The objection to the constitutionality of the act of 1895 cannot prevail. Nor is there anything in the objection that the ordinance was finally passed at the same meeting of council at which it was introduced, in contravention of the city charter, for the charter, title 3, section 29, in terms, permits the final passage of an ordinance at the same meeting at which it was introduced, by a vote of two-thirds of the members of the council (*Pamph. L.* 1871, *p.* 224), and the record in the case shows that this ordinance was passed by the vote of sixteen members out of a total membership of nineteen.

The next ground upon which the ordinance is assailed is that council failed to comply with that requirement of the city charter which directs every ordinance to be read three times before its final passage; and it is insisted that nothing less than a complete reading, section by section each time, is a

compliance with this requirement. If this be so, then this provision of the charter was disregarded, for the ordinance, on its third reading, was not read in full but only by its title. But I do not think that it is necessary that every ordinance must be read three times at length in order to satisfy this charter requirement. The constitution of this state, article IV., section 4, paragraph 6, directs all bills and joint resolutions to be read three times, both in the senate and general assembly, before the final passage thereof, yet it has always been considered by both houses of the legislature that a reading of a bill or resolution by the title thereof for at least one of the three readings was a compliance with the constitutional mandate. An examination of the senate journal and the minutes of the assembly will disclose that this is the inveterate practice in both the upper and the lower house. The charter provision now under consideration is taken almost verbatim from the section of the constitution which has been quoted, and the construction which had been put upon that section by the lawmaking power for so many years previous to the passage of the Camden charter, determines the meaning to be given to the charter requirement in question. It is a well-settled rule that where a statutory provision of doubtful import has been incorporated into a subsequent statute, after it has received a long-continued practical construction, the interpretation given to such provision will be considered to have been adopted as well as the words. *Fritts* v. *Kuhl,* 22 *Vroom* 199, 200.

The mandate of the Camden charter that every ordinance shall be read three times before its final passage was not disregarded when this ordinance was read by its title, and not in full, for its third reading.

One other objection remains to be considered, and that is that the ordinance was not duly published as required by law. The contention of the prosecutors is that by the terms of the ordinance it took effect immediately, notwithstanding the fact that, by the first section of an act of the legislature entitled "An act concerning the publication of ordinances, financial

statements and other public notices," approved March 25th, 1881 (*Gen. Stat., p.* 793), it is enacted that no ordinance passed by the city council of any city of this state shall become operative and binding until it shall have been published in at least one newspaper printed and published in such city for at least two insertions. But this statutory provision merely nullifies that portion of the ordinance which ordains that it shall go into effect immediately. The ordinance is not rendered void by the attempt of the city council to put it in force at a time earlier than the statute of 1881 permits; it only remains inoperative until after its publication as required by law. *Bowyer* v. *Camden*, 21 *Vroom* 87, 91.

The second section of the act of 1881, above referred to, is in these words : " That the said city councils shall publish the annual financial statements of such cities in at least one newspaper printed and published in the city for which said financial statement is made, for at least two insertions; and all other public notices, required by law to be published in any manner, shall be published in at least one newspaper in said cities for at least two insertions; provided, that in any case where such publication is made in two newspapers, said papers shall not be of the same political party." The ordinance which is attacked by the prosecutors was published in the " Post," the " Courier" and the " Telegram," three of the newspapers of the city of Camden, all of which belong to the same political party, and it is urged that such a publication is in direct violation of the act of 1881, and cannot have the effect of rendering the ordinance operative. The act of 1881 does not prohibit the publication of ordinances in two newspapers of the same political party. It deals with the publication not only of ordinances, but of financial statements and of all other public notices. By its first section it regulates the publication of ordinances only; by its second section it regulates the publication of annual financial statements and all other public notices, and then, by a proviso, directs that, *in any such case,* where such publication is made in two newspapers, said papers shall not be of the same political party.

Manifestly this proviso has no reference to the matters dealt with in the first section, but relates solely to the publication of annual financial statements and other public notices.

But even if it had been considered that this proviso regulated the publication of city ordinances as well as of other matters, it would not have availed the prosecutors, for, by an act approved April 8th, 1892, entitled "An act in relation to city printing and official advertisements in cities of the second class in this state" (*Gen. Stat., p.* 2329), the common council of cities of the second class, with the consent of the mayor, were each of them authorized to designate by resolution, and without limitation as to the political complexion thereof, the official newspaper or newspapers in which should be solely published all official notices, ordinances, advertisements and official proceedings relating to the municipal affairs of any such city. Camden is a city of the second class, and on the 21st of February, 1894, in pursuance of the authority conferred by the act of 1892, it designated the "Post," "Courier" and "Telegram" as its official papers.

The act of 1892 was intended to prescribe a different method for the publication of ordinances, advertisements and official proceedings relating to the municipal affairs of cities of the second class, from that prescribed by the act of 1881, and to that extent repealed the prior act, for it is a well-settled rule, in the construction of statutes, that even if the subsequent statute be not repugnant in its provisions to a prior one, yet if it was clearly intended to prescribe the only rule in the case provided for, it repeals all prior acts which regulate the subject. *Industrial School District* v. *Whitehead,* 2 *Beas.* 290; *State* v. *Commissioner of Railroad Taxation,* 8 *Vroom* 228; *Bowyer* v. *Camden, supra.* The publication of the ordinance under review was, therefore, rightly made in those newspapers which had previously been designated by the city of Camden as its official papers.

In my opinion, no infirmity has been shown in the ordinance brought up by this *certiorari,* and the writ should be dismissed, with costs.