LAWRENCE FAGAN, PROSECUTOR, v. MAYOR AND COMMON COUNCIL OF HOBOKEN ET AL.

Argued November 6, 1912—Decided April 24, 1913.

1. The act of 1892 (*Pamph. L.*, p. 414; 3 *Comp. Stat.*, p. 3767, § 24), which provides: "That it shall be lawful for the common council * * * with the consent of the mayor of any city of the second class (Hoboken is a city of the second class), to designate by resolution the official newspaper or newspapers published in any such city, in which shall be solely published all official notices, ordinances, advertisements * * * and to fix a compensation to be paid by the city for the service rendered by such official newspaper or newspapers," is not mandatory in its terms upon cities of the second class, to designate any official newspaper or newspapers.

2. The act is purely directory and does not limit the number of official newspapers that may be so designated.

3. The statute relates to proper, orderly and prompt conduct of business, by a municipality of the second class.

4. A substantial compliance with its essential provisions is sufficient. An omission of a formality which does not affect the essence of the transaction does not taint such transaction with illegality.

5. By resolution, the common council of the city of Hoboken, which resolution was approved by the mayor, ordered the payment of claims of the Ivins Printing and Publishing Company, who publish a newspaper in said city, for the publication therein of official notices, ordinances and other matters coming within the section of the act recited, though such newspaper had not been formally designated as the official newspaper and though the "Hoboken Observer," some years prior thereto, had been so designated. *Held,* that the action of the mayor and common council in ratifying the publication in the newspaper, though irregularly and informally done, was equivalent to the designation of another official newspaper and authorized the payment of the claim.

On *certiorari.*

Before Justices SWAYZE, VOORHEES and KALISCH.

For the prosecutor, *Merritt Lane.*

For the defendants, *John J. Fallon.*

The opinion of the court was delivered by

KALISCH, J.  On the 2d day of January, 1903, the common council of the city of Hoboken by resolution, with consent of the mayor, designated the "Hoboken Observer" as the official newspaper of the city of Hoboken under the act of 1892. *Pamph. L., p.* 414; 3 *Comp. Stat., p.* 3767, § 24.

The section of the act directly involved in the matter presented for decision reads: "That it shall be lawful for the common council  *  *  *  with the consent of the mayor of any city of the second class in this state (Hoboken is a city of the second class), to designate by resolution the official newspaper or newspapers published in any such city, in which shall be solely published all official notices, ordinances, advertisements  *  *  *  and to fix a compensation to be paid by the city for the service rendered by such official newspaper or newspapers."  By a resolution of the 28th day of August, 1912, the common council of the city of Hoboken ordered claims of the Ivins Printing and Publishing Company, who publish a newspaper in said city designated as the "New Inquirer," for the publication of official notices, ordinances, and other matters coming within the section of the act above set forth, in said newspaper, amounting to $214.36, to be paid.  The "New Inquirer" had not been formally designated by the common council as the official newspaper of the city of Hoboken.  This is one of the reasons why the prosecutor seeks to have this resolution set aside.  A further reason urged is that the "Hoboken Observer," having been designated as the official newspaper in 1903 and no change having been made therein, it is still the official newspaper and that the publication of the matters in the "New Inquirer" was unauthorized by law and hence an illegal act and the common council was therefore without any authority to order payment of the claims.  We are unable to concede to this view of the effect of the statute of 1892. It is to be observed that the statute is not mandatory in its terms.  It is clearly directory.  It simply permits a common council of a city of the second class, by resolution, with the consent of the mayor, to designate one or more official news-

papers. The act does not limit the number of official newspapers that may be so designated. Nor is it obligatory in its terms upon cities of the second class to designate any official newspaper or newspapers. It may be freely conceded that the statute seems to provide a complete scheme for the designation of official newspapers in cities of the second class as stated by Mr. Justice Dixon, in *Wilson* v. *Trenton, 27 Vroom* 469, and that where such designation is attempted to be made the consent of the mayor is necessary to the validity of the council's resolution, but that is an entirely different proposition from the one presented here. We are asked to declare, that because the common council, with the consent of the mayor, designated the "Hoboken Observer" as the official newspaper in 1903, and it appearing that the resolution was never rescinded and none other passed designating any other official newspaper, that it therefore remained the sole official newspaper in which the matter concerned here could be lawfully published. The statute relates to the proper, orderly and prompt conduct of business, by a municipality of the second class. A substantial compliance with its essential provisions is sufficient. An omission of a formality which does not affect the essence of the transaction does not taint such transaction with illegality. 36 *Cyc.* 1157; *People* v. *McDonough,* 173 *N. Y.* 181. It must be borne in mind that the object of the statute was to have the public matters described therein published in a newspaper designated by the common council with the consent of the mayor. It is not essential to the main object of the statute that the act of publishing the official notices, ordinances, &c., shall be preceded by a formal resolution of the common council with the consent of the mayor designating the newspaper in which the same are to be published, as the official one. While this would be undoubtedly a more orderly procedure the failure of its observance cannot affect the legality of the acts of publication. The design of the statute was to leave to the common council the exercise of its sound discretion in selecting the newspaper or newspapers. The service to be performed was one for the benefit of the public. Its proper per-

formance required the consideration of the extent of the circulation of the newspaper and how best to reach the public. The object was to give notice to those who might be interested in proceedings of the council, relating to matters in which the public has an interest; and, also, to stop a pernicious practice which prevailed, in that newspapers designated as legalized, without any authorization whatever would publish official notices, &c., and demand of the municipality payment for the same.

There is nothing in the act which prohibits the common council from designating more than one newspaper as official. This has been expressly decided by this court in *Anderson* v. *Camden,* 29 *Vroom* 515, where Mr. Justice Gummere, on page 521, in commenting on this act, says: "The common council of cities of the second class, with the consent of the mayor, were each of them authorized to designate by resolution, and without limitation as to the political complexion thereof, the official newspaper or newspapers in which should be solely published all official notices, ordinances, advertisements and official proceedings relating to the municipal affairs of any such city. Camden is a city of the second class, and on the 21st of February, 1894, in pursuance of the authority conferred by the act of 1892, it designated the "Post," "Courier" and "Telegram" as its official papers." It follows from this judicial declaration that there is vested in the mayor and common council the authority to designate more than one official newspaper in cities of the second class. It is therefore inconceivable upon what sound legal principle an irregularity in the method in which this authority has been exercised can make the act resulting from such authority, though accomplished in an irregular manner, a nugatory or illegal one. The authorized act though accomplished in an irregular manner is valid, unless there is something in the statute which would make it otherwise. As has been said, we find nothing in the statute which makes it obligatory, in its terms, upon cities of the second class to designate any official newspaper or newspapers. The authority to designate more than one official newspaper is clear. It follows, there-

fore, that the action of the mayor and common council in authorizing or ratifying publication in an additional newspaper to the one contained in the resolution of 1903 is equivalent to the designation of an official newspaper. This need not be done by formal resolution. It may be informally done by the common council, so long as it receives the mayor's consent. Acts done by the common council with the consent of the mayor regarding the publication of notices, &c., in a newspaper not designated official by a formal resolution may be equivalent to such official designation. We may properly infer from the reading of the act that it was not the intention of the legislature to divest the common council of its common law right to exercise its discretion as an administrative body of governmental affairs to select the newspaper or newspapers that would best serve the interests of the public, in which to publish the required notices, ordinances, &c., notwithstanding that it had already formally designated a newspaper as the official one. Where the terms of a statute leave room for any administrative discretion to be exercised, it cannot be interpreted to be mandatory or to be a condition precedent. *Pott. Dwar. Stat.* 222.

From the testimony taken in this case it appears that it was not the custom of the common council to direct the city clerk in what newspapers to publish the required official notices, &c., and that it has been the uniform custom for the city clerk to advertise in such newspapers as he might select and the bills therefor were afterwards submitted to the council and ordered paid; that this mode of procedure had been going on since 1906.

Thus it appears that at least since 1906, the common council had not recognized any official newspaper by express designation and although the bulk of official matter was published in the "Hoboken Observer," other newspapers were permitted to share in the publication of official matter required to be published, without any question.

The bills attacked in this proceeding were ordered paid by resolution of the common council, with the approval of the mayor, and the public had the benefit and reaped the advan-

tage of the work performed and it would be not only an unconscionable act but one contrary to the best legal thought pervading our decisions to deny the claimant's right to compensation merely because there was an informality in the procedure on the part of the common council in a non-essential requirement. The writ will be dismissed, with costs.