ENGLISH AND SCOTTISH-AMERICAN MORTGAGE AND INVESTMENT
COMPANY, LIMITED, V. D. H. HARDY, SECRETARY
OF STATE.

No. 852.   Decided February 5, 1900.

**1.   Constitution—Impairing Contract—Foreign Corporation.**

Rights of property acquired by a foreign corporation under a permit to do business in the State obtained under a previous law, if such as are protected by the Constitution, need no issuance of another permit for their protection; and an amendment of the law requiring conditions for obtaining a renewal of such permits with which the corporation can not comply is not unconstitutional as impairing such previously acquired rights. (P. 295.)

**2.   Constitution—Act of Legislature—Subject Embraced in Title—Amendment of Revised Statutes.**

Description of an act in its title as an amendment of a numbered article in a code, such as our Revised Statutes, is sufficient to allow any amendment germane to the subject treated in the article referred to. (P. 298.)

**3.   Same.**

The Act of the Twenty-fifth Legislature, Laws of 1897, page 192, entitled "An Act to amend articles 641 and 642, chapter 2, title 21, of the Revised Civil Statutes of Texas, relating to the creation of corporations," was not unconstitutional so far as it attempted, in subdivision 56, to restrict the issuance of permits to do business to such foreign corporations as could show subscription of 50 per cent and payment of 10 per cent of their authorized capital,—a subject not relating to "creation of corporations" but embraced in subdivision 50 of article 642 previous to such amendment. (Pp. 295-298.)

**4.   Revised Statutes—Amendments Concurrent with Adoption.**

Reviewing the legislation on the subject (Revised Statutes 1879, article 566, and subsequent amendments; Revised Statutes 1895, article 642; Laws of 1897, page 192, subdivision 56), held, that the reference in the last named act to article 642, as the law to be amended, meant that article as amended by the Act of 1895 and appearing in the Revised Statutes as published, and not such article as previously reported by the revisers but which was never adopted in that form. (P. 298.)

**5.   Constitution—Title of Act—Numbered Articles of Statutes.**

That the provision of the Act of 1895, appearing as article 642 of the Revised Statutes, and restricting permits to foreign corporations, should be held unconstitutional because not embraced in the title of the act (which is not decided), would not make invalid the same provision in the Act of 1897 adopted as an amendment of such article by its number,—such last act taking effect as a new exercise of legislative power, and the reference to article 642 being a sufficient description of the subject whether that article was previously constitutional or not. (Pp. 298-300.)

**6.   Same—Amendment of Unconstitutional Law.**

While amendment of an unconstitutional law would not impart validity to it, the new statute may contain all the elements of a valid enactment, and therefore have the force of law from its adoption;—the invalid law serving when properly referred to, to indicate the proposed subject for the new and valid one. (P. 300.)

**7. Mandamus—Foreign Corporation—Permit—Stock Subscription.**

A foreign corporation is not entitled to mandamus requiring the Secretary of State to issue it a permit to do business, where it does not show that 50 per cent of its authorized capital stock has been subscribed as required by laws of 1897, page 192, subdivision 56. (P. 295.)

ORIGINAL APPLICATION for writ of mandamus against the Secretary of State to compel him to issue to applicant a permit to do business in the State.

*T. W. Gregory,* for relator.—The proviso in section 56 of chapter 130 of the Acts of the Regular Session of the Twenty-fifth Legislature (page 192) seeking to restrict the granting of permits to foreign corporations is unconstitutional and void under section 35 of article 3 of the Constitution of the State of Texas, the subject of said proviso not being expressed in the title to the act, and the bill containing more than one subject. Const. of Texas, sec. 35, art. 3; Acts Twenty-fifth Leg., p. 188; arts. 641, 642, chap. 2, title 21, Rev. Civ. Stats. (not as published, but as originally adopted); Acts of 1895, p. 190; Acts of 1893, p. 109; Acts of 1891, p. 161; Acts of 1888, p. 1; Acts of 1887, p. 40; Acts of 1885, p. 59; Rev. Stats. of 1879, title 20, chaps. 1, 2; Rev. Stats. of 1895, chap. 17, title 21; Acts of 1889, p. 87; Acts of 1887, p. 116; Adams v. San Antonio W. W. Co., 86 Texas, 486; Giddings v. San Antonio, 47 Texas, 553; Gunter v. Texas L. & M. Co., 82 Texas, 502; Cannon v. Hemphill, 7 Texas, 208; State v. Shadle, 41 Texas, 405; Cool. Const. Lim., 172 et seq.; Grubbs v. State, 24 Ind., 295; Igoe v. State, 14 Ind., 239; State v. Bankers' Assn., 23 Kan., 501; Eaton v. Walker, 76 Mich., 579; Stewart v. Society, 41 Mich., 67; Messenger v. State, 25 Neb., 674; People v. Congdon, 77 Mich., 351; Insurance Co. v. Iron Co., 42 Fed. Rep., 372; Dorsey's Appeal, 72 Pa., 192.

Counsel for respondent practically admit that "if the Act of 1897 undertook to amend a separate and independent law which related alone to the creation of private domestic corporations," the relator would be correct in its contention, but insist that the Act of 1897 amends article 642 of the Revised Civil Statutes of 1895, and that section 50 of that article contains a proviso similar to the one here attacked; and further, that section 35 of article 3 of the Constitution has no application (under section 43 of article 3) to Revised Statutes, and that the Legislature could therein embrace in the same chapter, article, etc., as many incongruous subjects as it saw fit; that article 642, as found in the Revised Statutes, was a valid enactment, and the amendatory Act of 1897 was likewise valid under the decision in Gunter v. Texas Land Mortgage Co., 82 Texas, 496.

A complete answer to this contention is that section 50 of article 642 is not a part of the Revised Civil Statutes of Texas, adopted in 1895, nor is there anything whatever in the entire act relating to permits to foreign corporations except article 745, which provides that permits

shall be issued to foreign corporations filing copies of their articles of incorporation, etc.

By a reference to the original act in the office of the Secretary of State, it will be seen that article 642 contains only thirty-nine sections, and is a reproduction of the Act of 1891, page 161.

It is true that the volume of laws usually known as the Revised Statutes of 1895 contains the entire Act of 1895, page 190, including section 50 of article 642. It is also true that the volume purports upon its face to be a single legislative act presented to the Governor for his approval on April 29, 1895, and becoming a law without his signature. As a matter of fact, the Act of 1895, page 190, was passed subsequently to the act adopting and establishing the Revised Civil Statutes of 1895, the first mentioned being presented to the Governor on April 30, 1895, and the second on April 29, 1895.

This printed volume was compiled by Mr. Nat Jackson (I believe) under authority of chapter 82 of the Act of 1895 (page 110), approved by the Governor on April 30, 1895.

The purpose of this last mentioned act is expressed in its title to be "to provide for the publication and distribution of the Revised Civil Statutes, the Penal Code, and Code of Criminal Procedure of the State of Texas adopted and established by the Twenty-fourth Legislature of the State of Texas, and to make an appropriation therefor;" it is not an act to create the Revised Civil Statutes, which are spoken of in section 1 as already adopted "by the present session of the Legislature," and its purpose is only to provide for the printing and distribution of existing laws, the volume to be known as "The Revised Statutes of Texas, 1895" (section 2). Section 4 provides that where an article "in said Revised Statutes or Codes shall have been amended" by the Legislatures of 1893 or 1895 the articles as amended should be inserted in the published volume in lieu of the original article. Section 8 provides that the Governor should appoint a codifier who should prepare the volume for publication and read and revise the proof, etc. The remaining sections relate to the mechanical part of the work and its distribution. It will hardly be contended that the mechanical act of Mr. Jackson in substituting for publication the Act of 1895 in lieu of the Act of 1891 was a legislative enactment, or that it made any change whatever in the existing law; it surely will not be contended that Mr. Jackson was empowered to make the unconstitutional Act of 1895 constitutional and valid by such a mechanical performance, or that the title to the act creating his position would sustain a provision giving such authority. And, besides this, the unconstitutional Act of 1895 had no effect as to the proviso, and amended nothing in that respect, and so even the limited compiling power given Mr. Jackson under section 4 could not apply to this proviso. It seems clear that chapter 82 of the Acts of 1895 (page 110) is not such an "adoption of and giving effect to" a digest or revision as is contemplated by section 43, article 3, of the Constitution. Such an act, and the one to be looked to in this case, is the one presented

to the Governor on April 29, 1895; its title is "An Act to adopt and establish the Revised Civil Statutes of the State of Texas." Section 1 is: "Be it enacted by the Legislature of the State of Texas, that the following titles, chapters, and articles shall hereafter constitute the Revised Civil Statutes of the State of Texas."

Relator having invested its funds in Texas before the Act of 1897 was passed, on real estate security, and having invested no funds since then, and having necessarily become the purchaser at foreclosure sale of much of the real estate security, and being in position where it must necessarily become the purchaser of still more under foreclosure of loans not yet due, the effect of said act, which will prevent it from making any enforceable contracts in reference to sale, lease, or other disposition of said lands is to impair the obligation of its contracts and deprive it of its vested rights.

This is not a question of imposing conditions on corporations wishing to do business in the State, or of taking away permits already issued, but is a question of impairing the obligation of contracts legally entered into by subsequent legislative provisions. While a State may prescribe the terms upon which foreign corporations may do business within its limits and may exclude them entirely, it can not confiscate or destroy acquired rights.

*T. S. Smith,* Attorney-General and *R. H. Ward,* Assistant, for respondent.—If the Act of 1897, under consideration, undertook to amend a separate and independent law, which alone related to the creation of private domestic corporations, there would be much force in the contention of relator. The Act of 1897 does not amend an independent law, but amends articles 641 and 642, chapter 2, title 21, of the Revised Civil Statutes of Texas relating to private corporations.

Subdivision 50 of article 642 of the Revised Statutes, in force prior to the amendment of the Act of 1897, imposed the same conditions upon foreign corporations as are imposed by the amendment of 1897. This presents the question, is article 642, as set forth in the Revised Statutes, constitutional? If it is, then the Act of 1897 amendatory of this article is certainly in compliance with the Constitution. Title 21, Revised Statutes, treats of all corporations, both foreign and domestic. Chapter 17 of that title also relates to granting permits to foreign corporations to do business in Texas.

Section 35, article 3, of the Constitution has no application whatever to the enactment or putting in effect of the Revised Statutes, for section 43 of article 3 of the Constitution expressly exempts the Legislature, in the enactment of the Revised Statutes, and putting them into effect, from the limitations imposed by section 35, article 3, of the Constitution. If section 35, article 3, of the Constitution has no application to the Revised Statutes, then there is absolutely no limitation upon the Legislature in embracing in the same act as many inconsistent or incongruent subjects or objects as the Legislature may see fit. The United States

Constitution has no provision similar to section 35, article 3, of the Texas Constitution, hence, various and distinct subjects are often embraced in an act of Congress. This being so, the arrangement of a statute, the classification of the various subjects contained in a statute, or the order in which they come, are all matters within the legislative discretion and control. There is no constitutional inhibition, in the absence of a constitutional requirement, against incorporating in one act divers subjects of legislation, that in one act regulations may be prescribed for the creation of domestic corporations and the regulation of foreign ones. In the case of Robinson v. State, 15 Texas, 313, it was said: "The classifying of the provisions of statutes was doubtless suggested by the practice adopted by elementary writers and commentators upon the laws, of classifying the subjects treated of, for the purpose of orderly and harmonious arrangement and convenience. But it has never been supposed that such arrangement and classification constituted any part of either the common or statute law, or that it was intended to subserve any other purpose than that of convenience merely. It would be quite as foreign and repugnant to all heretofore received ideas of what properly constitutes the title of an act, to hold that it extends to and includes the classification of its provisions, as it would be to suppose the classification in the present instance as appropriate as that which has been usually adopted. Because a certain classification has been usual, it is not therefore binding upon the Legislature as a matter of constitutional law. It can not be supposed that, if they should depart from it, to adopt one which might be, or which they might deem to be, more appropriate, the act would be thereby rendered unconstitutional and void."

We think it perfectly plain that article 642 as found in the Revised Statutes was a valid enactment. If this be true, then the amendatory Act of 1897 fully complies with section 35, article 3, of the Constitution. The caption of the act clearly points out the article, chapter, and title of the Revised Statutes to be amended. That this was a sufficient compliance with section 35, article 3, of the Constitution, has been expressly held in the case of Gunter v. Texas Land Mortgage Co., 82 Texas, 496, and in State v. McCracken, 42 Texas, 383.

Now to recur to the Act of 1897, page 188, it will be observed that that act amends article 642 of the Revised Statutes. It changes subdivision 50 by eliminating from it all the provisions relating to foreign corporations, and makes it relate to the organization of mutual fire, or storm, or lightning insurance companies alone, while it adds another subdivision, denominated 56, in which are incorporated all the provisions relating to both domestic and foreign corporations, as to their authorized capital stock, and the amount thereof required to be subscribed and paid as conditions precedent to the right to transact business, which were in subdivision 50 prior to its amendment by the Act of 1897 under consideration.

We think it too plain to admit of controversy that the Act of 1897

is constitutional and valid, and that relator must comply with it in order to be entitled to receive a permit to transact business in Texas.

As to the second question. A State can exclude altogether a foreign corporation from transacting business in the State, or permit it, subject to such conditions, limitations, and regulations as the Legislature may prescribe with but two exceptions, which are: 1. A State can not exclude from its limits a corporation engaged in interstate or foreign commerce; and, 2. Where the corporation is in the employ of the general government. 2 Cook on Corp., sec. 696; Huffman v. Mort. and Inv. Co., 36 S. W. Rep., 306; Silver Mining Co. v. New York, 143 U. S., 315; Doyle v. Insurance Co., 94 U. S., 541. In the above case on page 540 it was said: "The cases of Bank of Augusta v. Earle, Ducat v. Chicago, Paul v. Virginia, and LaFayette Insurance Co. v. French, establish the principle that a State may impose upon a foreign corporation, as a condition of coming into or doing business within its territory, any terms, conditions, and restrictions it may think proper, that are not repugnant to the Constitution or laws of the United States. The point is elaborated at great length by Chief Justice Taney in the case first named, and by Mr. Justice Field in the case last named.

"The correlative power to revoke or recall a permission is a necessary consequence of the main power. A mere license by a State is always revocable. Rector v. Philadelphia, 24 How., 300; People v. Roper, 55 N. Y., 629; People v. Commissioners, 47 N. Y., 50. The power to revoke can only be restrained, if at all, by an explicit contract upon good consideration to that effect. Humphreys v. Pegues, 16 Wall., 244; Tomlinson v. Jessup, 15 Wall., 454.

"A license to a foreign corporation to enter a State does not involve a permanent right to remain, subject to the laws and Constitution of the United States. Full power and control over its territories, its citizens, and its business, belonging to the State."

In the case of Taber v. Interstate Building and Loan Association, 91 Texas, 95, the Supreme Court say: "Every State has the right to prescribe the terms upon which any corporation created in another State or foreign country may do business within its limits, and may exclude such corporations entirely, with the exceptions of corporations engaged in interstate commerce or such as are employed by the United States in the transaction of its business."

WILLIAMS, ASSOCIATE JUSTICE.—This is a suit instituted in this court by plaintiff, a foreign corporation, to compel, by mandamus, the Secretary of State to issue to it a permit to do business in this State, which the Secretary refuses to do, on the ground that plaintiff has not shown that 50 per cent of its authorized capital stock has been subscribed, as required by the Act of the Legislature of 1897. Laws 25th Leg., p. 192, subdiv. 56.

The fact thus relied upon by respondent is admitted, and it is conceded also that proof of such fact is, by the statute referred to, made

a condition precedent to the issuance of the permit; but plaintiff contends (1) that the provision of the statute in question is unconstitutional and void because it is not embraced in the title of the act stating the subject thereof; and (2) that such provision can not be held applicable to the plaintiff, because its effect would be to impair the obligation of a contract between plaintiff and the State and to destroy plaintiff's vested rights of property. The second contention is based upon the facts that, in 1889, under the laws then existing, which made no such requirement as that contained in the Act of 1897, plaintiff obtained a permit to do business in this State for the period of ten years from its date, and, thereafter and before the passage of the Act of 1897, made loans and acquired large property rights in the State; that, although it has made no loans since the passage of that statute and has acquired no property except by foreclosure of liens made before it took effect, and has, since its enactment, used its utmost efforts to wind up its business in the State and sell all lands owned by it, it has not been able to dispose of all of such property; and plaintiff claims that without a further permit, it can not, under the laws, make enforceable contracts for renting and sale of such lands.

As to this, we think it is sufficient to say that these facts present no ground for compelling the respondent to issue a new permit to do business, if the statute does not make it his duty to do so. Whether or not such is his duty must depend upon the question, whether or not plaintiff has complied with the conditions imposed by law to entitle it to demand of the officer the action which it seeks to compel him to take. The proposition involved in this contention is that plaintiff has acquired rights of property which are protected by the Constitution, notwithstanding the expiration of its permit. If so, there is no need for the issuance of another permit to enforce such rights. All the rights of property claimed by plaintiff, as arising from the transaction of its business under the expired permit, might be conceded, and still it would not follow that it is the respondent's duty to issue a new permit. Such a duty must be imposed by the law under which respondent is required to act before the court can compel him to perform it. The case must therefore depend upon the decision of plaintiff's first contention.

The general subject of the issuance of permits to foreign corporations is treated in articles 745-749 of the Revised Statutes of 1895, as amended, as to article 745, by chapter 119, Acts of 1897, page 167.

All of the requirements of these articles were complied with by plaintiff, and under their provisions, it became the duty of respondent to issue the permit, unless an additional condition precedent to its issuance is imposed by article 642 of the Revised Statutes, as amended by chapter 130 of the Acts of 1897, page 188-192, before referred to. It is conceded that such is the effect of the last named statute, if it is a valid law, and thus the contention first stated is raised. To a right understanding of the objection to the statute, a history of the legislation ending in the provisions of the Act of 1897 last referred to, is essential.

In the Revised Statutes of 1879, the purposes for which corporations might be created in this State were defined in article 566, and to that subject alone the article related. It was amended from time to time by the substitution of new articles with the same number, all of which, down to and including that of 1891, treated solely of the same subject as the original. The amendment of 1891 stood as article 566 when the codifiers came to revise the statutes, and in their codification they embodied it as article 642. No action was taken by the Legislature upon their revision and the bill reported for adopting it, until the session of 1895, when the bill was adopted, but with the provision, in section 26, "that no laws  *  *  *  enacted by the Twenty-third Legislature (1893) or by the present session of the Twenty-fourth Legislature (1895) shall be in any way affected by the repealing clause of this title, but any and all such laws shall continue to be the laws of this State, this act of revision to the contrary notwithstanding."

In the meantime, the Legislature, in 1893, had adopted another amendment of article 566 of the Revised Statutes of 1879, as amended in 1891, which amendment was still confined to the original subject of that article,—the purposes for which corporations might be created. But in 1895, at the same session at which the Revised Statutes were adopted, an amendment of the Act of 1893 was passed substituting a new article 566 for that contained in the last named act. The amendatory Act of 1895 gave this title: "An Act to amend article 566, chapter 2, title 20, of the Revised Civil Statutes of the State of Texas, as amended by the Twenty-third Legislature, chapter 83, page 109, relating to the purposes for which private corporations may be formed." The article as set forth in the body of the act contained fifty-four subdivisions giving the purposes for which corporations might be formed, of which subdivision 50 was as follows:

"For the organization of mutual fire associations without an authorized or subscribed capital stock. The stockholders of all private corporations created under the provisions of this act shall be required to subscribe at least fifty per cent and pay in at least ten per cent of its authorized capital before it shall be authorized to do business in this State; and whenever the stockholders of any such company shall furnish satisfactory evidence to the Secretary of State that at least fifty per cent of its authorized capital has been subscribed and ten per cent paid in, it shall be the duty of said officer to receive, file, and record the charter of such company in the office of the Secretary of State upon application and the payment of all fees therefor, and to give his certificate showing the record of such charter and authority to do business thereunder; provided, that foreign corporations obtaining permits to do business in this State shall show to the satisfaction of the Secretary of State that fifty per cent of their authorized capital stock has been subscribed and that at least ten per cent of the authorized capital has been paid in before such permit is issued." Laws 24th Leg. (1895), p. 193.

The last proviso contains the first reference made in any of the stat-

utes amending article 566 to foreign corporations or permits. That subject had been regulated by other statutes which were codified by the revisers in articles 745-749 before referred to.

At the same session of the Legislature which adopted the new Revised Statutes and the amendment just stated, an act for their publication and distribution was passed which provided that the "Revised Civil Statutes, the Penal Code, and the Code of Criminal Procedure" should be published and distributed in a volume to be entitled "The Revised Statutes of Texas of 1895," and contained the following:

"Sec. 4.   Where any article in said Revised Statutes or Codes shall have been amended and re-enacted by either of said Legislatures, said articles shall be omitted, and the article as amended and re-enacted shall be inserted in lieu thereof, with marginal notes or references showing the date of the statute by which said article was amended, and the page of the session acts in which said statute appears." Laws 24th Leg., p. 110.

In pursuance of this direction, the volume was published, containing, as article 642, the amendment adopted in 1895 of article 566 of the old revision, instead of that of 1891, as reported by the codifiers.

In 1897, the act relied on by respondent was passed: It was entitled "An act to amend articles 641 and 642, chapter 2, title 21, of the Revised Civil Statutes of Texas relating to the creation of corporations." Like the article amended, this statute again defines the purposes for which corporations may be formed, adding several subdivisions, one of which is as follows:

"The stockholders of all private corporations created for profit and with an authorized capital stock under the provisions of this chapter shall be required to subscribe at least fifty per cent and pay in at least ten per cent of its authorized capital before it shall be authorized to do business in this State, and whenever the stockholders of any such company shall furnish satisfactory evidence to the Secretary of State that at least fifty per cent of its authorized capital has been subscribed, and ten per cent paid in, it shall be the duty of said officer to receive, file, and record the charter of such company in the office of the Secretary of State upon application and the payment of all fees therefor, and to give his certificate showing the record of said charter, and authority to do business thereunder; provided, that foreign corporations obtaining permits to do business in this State shall show to the satisfaction of the Secretary of State that fifty per cent of their authorized capital stock has been subscribed, and that at least ten per cent of the authorized capital has been paid in, before such permit is issued." Laws 25th Leg. (1897), pp. 188-192.

The contention of plaintiff is that the last proviso, relating to permits to foreign corporations, is not embraced within the subject named in the title to the act. If we could disregard the reference in the title to the number of the article of the Revised Statutes to be amended, and look alone to the words, "relating to the creation of private cor-

porations," as expressing the whole subject of the act, it may be true that such expression would not be broad enough to admit provisions concerning the issuance of permits to foreign corporations. This it is unnecessary to decide, since, in view of the previous decisions in this and other courts and of the course of legislation based upon their authority, it must be held that such a reference to the number of an article in a code, such as our Revised Statutes, is sufficient in the title of an act amendatory thereof to allow any amendment germane to the subject treated in the article referred to. Gunter v. Texas Land Mortgage Co., 82 Texas, 502; State v. McCracken, 42 Texas, 384. Many decisions from other States to the same effect might be cited. The reason for the decisions holding this proposition must be that the naming of the article to be amended directs attention to all of the provisions therein, as the subject of the amending act, and that such provisions can be ascertained by reading the article to be amended. However questionable may be the practice and the decisions by which it has been recognized as valid, it has been so long and so often followed that this court would not be justified in now holding it to be a violation of the Constitution.

The effect of the reference to the article to be amended is not restricted by the other language of the title to the act in question. Such other language is, as far as it goes, properly descriptive of the subject of the amended, as well as of the amendatory, act. It simply does not cover the whole of the subject; but the reference to the number of the article to be amended does include, as the subject of the amendatory act, the whole subject embraced by the provisions of the former. It is that article which the title proposes to amend, and not merely such parts of it as relate to the creation of corporations.

It seems to be contended, however, that the reference to the article of the Revised Statutes to be amended should be treated as meaning the article of that number as embraced in the Code adopted by the Legislature, and not that published in the volume, the assumption being that the Legislature adopted the article 642 in the Code reported by the revisers, which contained no reference to permits to foreign corporations. The answer is that the article, as reported, never became a part of the adopted revision. By the operation of section 26 of the act adopting the Revised Statutes, and of section 4 of the act providing for the publication and distribution thereof, before stated, article 642, as reported, was displaced and the amendment of 1895 substituted in its stead, and the latter became the provision really adopted as article 642, and was therefore properly published as such. The Act of 1897 must therefore be regarded as an amendment of article 642, as contained in the published volume.

It is further urged that the Act of 1895 before stated as amending article 566, as enacted by the amendment of 1893, was itself void as to the proviso concerning the issuance of permits to foreign corporations, because there was nothing upon that subject in the law amended and

no title to the amending act sufficient to embrace it. We shall assume, without definitely so deciding, that this proposition is true. Its correctness may depend, however, upon the effect to be given to section 43, article 3, of the Constitution, which provides: "The first session of the Legislature under this Constitution shall provide for revising, digesting, and publishing the laws, civil and criminal; and a like revision, digest, and publication may be made every ten years thereafter; provided, that in the adoption of and giving effect to any such digest or revision, the Legislature shall not be limited by sections 35 and 36 of this article."

By this provision, the Legislature, in adopting and "giving effect to" the revision, is exempted from the requirement as to titles to bills. Whether this exemption exists only in the enactment of the bill directly adopting and putting in force the code, or also in the framing and passing, at the same session, of other bills adopting amendments which are made by the Legislature a part of the body of laws established, is a question which we do not find it necessary to decide.

Unless it is saved by the provision of the Constitution just quoted, it is probably true that the last proviso of subdivision 50 of the Act of 1895, amending article 566, was void, because it related to a subject embraced neither in that article nor in the title of the amendatory act. It would be true, also, that such proviso, from merely being published by authority in the Revised Statutes, would not acquire the force of law. The whole of the article as amended would not, in this view, be void, since the objection affected only the parts of it which were not germane to the subject of the original article, and therefore all of article 642 in the published volume, except those parts to which the objection applies, stood as the law of the State when the Legislature, in 1897, came to act upon it, and could properly be referred to as an article of the Revised Statutes in framing an amendment.

The question therefore arises whether or not the title to the Act of 1897, in giving the number of the article to be amended, sufficiently indicated the subject treated in the unconstitutional proviso, as a part of the subject of the amendatory act. We can see no substantial reason why this question should not be answered in the affirmative. The object of the requirement that the subject of an act should be stated in its title is simply to direct attention to the subject to be legislated upon. Such subject is sufficiently indicated when the title gives the number of an article of the Code in which it is included; and the fact that a provision in such article may be unconstitutional does not lessen the effect of the reference to it as notice that it is to be made the subject of further legislation. The amendatory act derives no force as law from any virtue in the act amended, but takes its effect from the new exercise of legislative power. If such power is exerted and the legislative will expressed in accordance with the Constitution, such expression becomes law without the aid of the statute referred to in the title, whether the latter is constitutional or not. The statute

amended is referred to only to indicate the subject with which the Legislature proposes to deal, and to such purpose its validity is not essential. The very object of the amendment may be to supply a constitutional enactment in the place of one which was unconstitutional.

It is sometimes said, broadly, that, since an unconstitutional statute is void, it can not be amended, and that hence another statute attempting an amendment of it is void. It is doubtless true that the amendment of an unconstitutional law does not impart efficacy to it, but it by no means follows that the new statute is void. It may contain all the elements of a valid enactment and therefore may have the force of law from its adoption. The mere fact that it attempts to amend an invalid statute can not defeat it when it is, itself, a complete expression of legislative will, made in conformity with constitutional requirements.

While the invalid statute may have no force of its own, it may serve, when properly referred to, to indicate the subject upon which the Legislature proposes to pass a valid law.

It was held in the case of Quinlan v. Houston, etc., Railway Company, 89 Texas, 356, that a repealed law might, by proper reference to its provisions in a subsequent statute, be imported into and become a part of the latter by force of the new legislative act. And in the following cases it was held that statutes undertaking to amend prior ones which were unconstitutional, merely because the Legislature had failed to comply with constitutional requirements in their enactment and not for want of power in the Legislature to adopt them, were valid laws taking effect from their passage. State v. Corbett, 61 Ark., 226; State v. Bailey, 56 Kan., 81; Walsh v. State, 142 Ind., 357; State v. City of Cincinnati, 40 N. E. Rep., 508. We think these decisions state the correct principle, notwithstanding some apparent conflict in the authorities.

The various provisions of article 642, as contained in the Act of 1895, did not constitute legislation upon more than one subject. All of such provisions might properly have been put in one statute with a title sufficiently broad to cover them. The defect consisted in the restrictive character of the title, which limited the subject to the creation of corporations. But, when the Legislature in 1897 acted upon the subject, it employed a title sufficient to cover all the provisions actually contained in the article to which the title pointed, and hence the new exercise of the legislative power made all such provisions valid.

Our conclusion is that the provision in question is valid, and that plaintiff, not having complied with it, is not entitled to the issuance of the permit.

*Writ refused.*