Essex County Court of Common Pleas.

BOARD OF COMMISSIONERS, CITY OF NEWARK, COMPLAINANT-APPELLEE, v. JOSEPH W. GRODECKI, DEFENDANT-APPELLANT.

Decided July 21, 1943.

For the complainant-appellee, *Raymond Schroeder,* corporation counsel (*Louis A. Fast*).

For the defendant-appellant, *Charles W. Chadwick.*

HARTSHORNE, C. P. J.   Defendant appeals from his conviction in the First Criminal Court of the City of Newark for the violation of a city ordinance, known as section 634 of the Revised Ordinances of the City of Newark, Revision of

1913) as amended. This ordinance, as amended, was adopted in 1942, and not only prohibits gaming of all sorts but provides that "no person shall  *  *  *  have in possession any ticket, slip, or other writing or printing  *  *  * indicating an interest, share, bet or pledge in any pool, lottery, racing, contest or other game of chance  *  *  *." The evidence shows that defendant had in his possession writings indicating bets on prize fights and basketball games with the names of the bettors, the amount bet, indicating those who did or did not pay, those who won and those who lost. There were also sheets of "Eddie's Basketball Service," indicating the games for the week, on which were marked in pencil the odds on the game, the names of the bettors, together with similar papers indicating odds and bettors' names on hockey and football games. It was also testified that defendant requested the return of a slip containing names of bettors, as he would not know who to pay off and who not to pay.

The defendant grounds his appeal on the claims, (1) that the ordinance under which he is convicted is invalid, (2) that the above evidence does not show him to have violated such ordinance.

Appellant claims the ordinance to be invalid not because of any defect or lack of completeness in its substance, but (1) because it was adopted, not as an original ordinance, but as an amendment to the original ordinance of 1913. section 634, and (2) because it does not expressly state the date it is to be effective.

This original ordinance appellant claims to be invalid since its penal clause fixes a mandatory penalty of "ten dollars for each offense." This, of course, violates the provisions of the Home Rule Act covering all municipalities (*Pamph. L.* 1917, *p.* 347; *N. J. S. A.* 40:49–5), which directs these ordinances to provide penalties in the discretion of the magistrate, for detention "not exceeding ninety days or a fine not exceeding two hundred dollars, or both." *Pfister Chemical Co.* v. *Romano,* 15 *N. J. Mis. R.* 71; 188 *Atl. Rep.* 727; *Fields* v. *Duffy,* 115 *N. J. L.* 319; 180 *Atl. Rep.* 225.

Appellant thereupon argues that, though complete and perfect in itself, the instant ordinance, purporting to amend an

invalid ordinance, is itself invalid, citing *Lassiter* v. *Atlantic City,* 86 *N. J. L.* 87; 90 *Atl. Rep.* 675, 676. But in this case the situation is quite different from that in the Lassiter case. There "the amending ordinance, standing by itself, did not provide for any license," the very point at issue being whether or not the defendant Lassiter should have taken out a license. Thus, as the court continues, the later ordinance, "standing by itself, would not support the present conviction."

In other words, there is a substantial difference between an amendment which is complete in itself, and one which changes but a few words in a previous ordinance, and is incomplete in itself. Obviously the latter, as the Lassiter case holds, does not itself express the clear will of the legislative body. It cannot itself notify the citizens, for whose governance it is adopted, of what that legislative will is. To do so, there must be added to such amendment the original enactment. But this original enactment is a nullity, or at least unenforceable, and hence adds nothing to the incomplete amendment. Such incomplete expression of the will of the governing body clearly cannot support a conviction.

On the other hand, if the enactment, which is later adopted, is complete in itself and without defect in its substance, it does clearly express the will of the enacting authority, and does give full notice to the citizens for whose benefit it is adopted. If these, the prime purposes for its existence, have therefore been completely accomplished, to invalidate the ordinance would defeat these prime purposes. Its defect is that the enacting authorities have mistakenly asked that it be inserted in a somewhat inappropriate place in the body of their law, *i. e.,* as an amendment to a previously existing enactment rather than as an independent enactment. For its legal effect in actually changing the original enactment is the same, whether it be adopted as an amendment or as an independent act. In either event, the later expression of the legislative will governs, and the previous inconsistent expression is wiped out, whether the later expression be expressly by amendment or by an independent enactment.

Surely, when the prime purpose of the enactment has been

met, both so far as the governing authority and the citizens are concerned, it is of little moment whether the later enactment has been fitted into the most appropriate, or a less appropriate, niche in the hall of municipal or legislative records. Hence, for all practical governmental purposes it is unimportant, from the standpoint of its validity, whether an ordinance, complete and perfect in itself, is recited as an independent enactment, or as an amendment to a previous ordinance.

And so are the authorities, both as to ordinances (*Public Service Co.* v. *Ridgewood,* 6 *N. J. Mis. R.* 435; 141 *Atl. Rep.* 672; 43 *C. J.* 561, § 883; *People* v. *Bowman,* 253 *Ill.* 234; 97 *N. E. Rep.* 304; *La Crosse* v. *Elbertson,* 205 *Wis.* 207; 237 *N. W. Rep.* 99; and as to statutes (*State, Trenton Iron Co.* v. *Yard,* 42 *N. J. L.* 357; *Smith* v. *Howell,* 60 *Id.* 384; 38 *Atl. Rep.* 180). Similar is the holding in the leading case of *Allison* v. *Corker,* 67 *N. J. L.* 596; 52 *Atl. Rep.* 362, though in that case the new amending statute was not complete in itself, so that the original act, found invalid, had to be read in connection therewith. Nevertheless, despite the fact that the amending statute was incomplete, as was the ordinance in the *Lassiter* case, *supra,* the court in the *Allison* case concludes that this incomplete act, amendatory of a previously invalid act, was itself valid and enforceable. The court reaches this conclusion on the ground "that an unconstitutional statute is nevertheless a statute," so that the provisions of the valid act were still "a fact to be reckoned with." It is clearly in this connection that the court says that, "The Supreme Court cannot set aside a statute as it can a municipal ordinance." In other words, an unconstitutional statute may yet support an amending statute, as the former is still "a fact to be reckoned with," whereas an unconstitutional municipal ordinance may be a nullity, which cannot support an incomplete, amending ordinance, according to the *Lassiter* case. And this is the general rule.

Similarly, even where a statute has been repealed our courts have held it may be amended, provided the new enactment is a law complete in itself. *Abrams* v. *Smith,* 98 *N. J. L.* 319; 119 *Atl. Rep.* 792. And such is the weight of authority.

*Crawford, Construction of Statutes,* § 117; *Commonwealth* v. *Kenneson,* 143 *Mass.* 418; 9 *N. E. Rep.* 761; *Columbia Wire Co.* v. *Boyce,* 104 *Fed. Rep.* 172; *Beatrice* v. *Masslich,* 108 *Id.* 743.

Since the amending ordinance here in question is complete in itself, both reason and authority support its validity in this regard, irrespective of its labeling as an amendment to a previous invalid enactment.

This conclusion renders it unnecessary to consider the question upon the assumption that the original Newark ordinance was but partially invalid. *Doran* v. *Camden,* 64 *N. J. L.* 666; 46 *Atl. Rep.* 724.

As to defendant-appellant's second point, that the ordinance does not expressly state the date it is to be effective and that it is consequently void, it is to be noted that there is no statutory enactment as to when ordinances are to be deemed to be intended to take effect in the absence of an express statement, as there is in the case of statutes, *i. e.,* July 4th (*N. J. S. A.* 1:2–3). Nor is there any statutory requirement applicable to penal ordinances, such as this, expressly as to the time of their taking effect, the provisions in that regard applying only to ordinances authorizing improvements, incurring of indebtednesses, or otherwise. (*R. S.* 40:49–9; 40:49–27; 40:74–4; *N. J. S. A.* 40:49–9; 40:49–27; 40:74–4.) The Home Rule Act, however, provides: "Upon passage, every ordinance or the title * * * shall be published * * *." (*R. S.* 40:49–2; *N. J. S. A.* 40:49–2.) The Commission Government Act provides—with exceptions here immaterial—that, "No ordinance * * * shall take effect less than ten days from the time of its final passage." Thereafter follow detailed provisions to delay such taking effect in case during such ten days there is a remonstrance filed by the voters against its taking effect. *R. S.* 40:74–5; *N. J. S. A.* 40:74–5.

In other words, and assuming that both the Home Rule Act and the Commission Government Act apply (compare *Peter's Garage* v. *Burlington,* 121 *N. J. L.* 523; 3 *Atl. Rep.* (*2d*) 634; *affirmed,* 123 *N. J. L.* 227; 8 *Atl. Rep.* (*2d*) 910), no ordinance, such as that in question, can take effect

at passage, or subsequent to passage, until ten days have elapsed after passage and the ordinance has been once published. Even then it cannot take effect if there has been a statutory remonstrance by the voters. With these varied, contingent, and complicated statutory provisions in mind, we find that the ordinance in question provides: "(2) This ordinance shall take effect as in law provided.

Clearly, the purpose of the governing authorities in using this language was, on the one hand, to avoid setting forth at length these intricate provisions expressly, and, on the other hand, to avoid the illegal statement that such ordinance should take effect on its passage. *Bowyer* v. *Camden*, 50 *N. J. L.* 87; 11 *Atl. Rep.* 137; *Anderson* v. *Camden*, 58 *N. J. L.* 515; 33 *Atl. Rep.* 846. The course adopted by the governing authorities, of incorporating the requirements of the above statutes by reference, was the simplest method they could use to indicate their intent, that when these varied statutory conditions were met, the ordinance should then take effect.

Indeed, this not only comports with the reasonable intention of the governing body of the municipality, but with that of the legislature itself. For while the Home Rule Act does not state in so many words that the publication above alluded to (*R. S.* 40:49–2; *N. J. S. A.* 40:49–2) shall occur "before any ordinance shall take effect," such is its obvious intent, such words in fact having been used in several of the underlying statutes from which the revision of the section in question was compiled. (*Pamph. L.* 1917, *ch.* 152, *p.* 345, § 1; *Pamph. L.* 1918, *ch.* 163, *p.* 478, § 1; *N. J. S. A.* 40:49–1, 40:49–2, 40:49–6.) Of course, in the absence of evidence of a contrary intent, the governing body must be presumed to have intended that this penal ordinance, for the protection of the public, should take effect as soon as the statutory requirements permitted.

And so are the authorities. In fact, the courts are apparently in general accord on the following principles pertinent to this situation:

(1) When a governing body has stated no effective date for an ordinance, it will be held to be effective on its passage, in

the absence of contrary provisions in the constitution or statutes. "The common rule in regard to legislation is that it shall take immediate effect unless otherwise provided. This rule is applied to ordinances." 2 *McQuillin Revised,* 732 § 702. 43 *C. J. Municipal Corporations,* 576, § 923.

(2) When the governing body has stated in an ordinance an effective date which is invalid, this will not invalidate the ordinance itself. *Bowyer* v. *Camden, supra; Anderson* v. *Camden, supra; Stuhr* v. *Hoboken* 47 *N. J. L.* 147; *McLaughlin* v. *Newark,* 57 *N. J. L.* 298; 30 *Atl. Rep.* 543; *affirmed,* 58 *N. J. L.* 202; 34 *Atl. Rep.* 13; *Community Natural Gas Co.* v. *Northern Texas Utilities,* 13 *S. W. Rep.* (2d) 184, 193 (*Texas*). This is for the reason that, regardless of the exact date when an ordinance is stated by the governing body to be effective, it is clear beyond peradventure that the governing body desires the ordinance to become effective at some time. Hence, the courts hold the provisions as to the effective date to be separable from the body of the ordinance, and it follows that this separable provision, even though invalid, cannot affect the validity of the body of the ordinance, under well settled principles.

(3) When the governing body has stated an effective date which is illegal, the ordinance will be held to be effective as nearly as possible in accord with the legislative intent, and in conformance with the constitutional or statutory provisions. (See cases cited under point 2, *supra.*)

(4) It would seem to follow as a corollary of the above principles that when, as here, the governing body has stated no effective date expressly, and there is no indication otherwise of an intent to delay the effective operation of the ordinance, but there are pre-existing constitutional or statutory requirements, such ordinance will be held to take effect upon compliance with such pre-existing requirements.

In any event, it would seem clear that since the fixing of an illegal effective date will not invalidate the ordinance, the fixing of no specific date, but the expression of the will of the governing body to proceed "as in law provided." cannot invalidate it. This objection of defendant-appellant, therefore, falls to the ground.

Appellant also contends that the facts do not show him to be guilty of a violation of the present ordinance, citing *People* v. *Gittens,* 78 *Misc.* 7; 137 *N. Y. S.* 670; *People* v. *Laude,* 81 *Misc.* 256; 143 *N. Y. S.* 156, as indicating that the ordinance does not cover private bets. Clearly, one who makes a private bet is not a bookmaker in the commonly accepted meaning of that term. But the ordinance here in question is by no means as narrow as the New York statute construed in the above cases, which covers bookmaking alone. The ordinance in question is particularly broad in character, having been much widened in its scope from its original form, found to be invalid as above. We quote the substance of the instant ordinance:

"The Board of Commissioners of the City of Newark do ordain:

"1. That section 634 of the Revised Ordinances of The City of Newark (Revision of 1913), and as amended, be and the same is hereby amended to read as follows:

"Section 634. No person shall deal, play or engage in faro, roulette, or other device or game of chance, or buy or sell what is commonly known as a pool, or any interest or share in any such pool, or shall make or take what is commonly known as a book, upon the running, pacing or trotting of any horse, mare, gelding, or other animal, or any game, racing or contest, or have in possession any ticket, slip or other writing or printing, of an interest or share, or showing or indicating an interest, share, bet or pledge, in any pool, lottery, racing, contest or other game of chance, or shall keep or attend a place to which persons may resort for engaging in any such acts, or for betting upon the event of any horse race, or other race or contest, or for gambling in any form, and no person shall aid, abet, assist or participate in any such pool, lottery, race or other contest or game of chance.

"Each and any person violating any of the above provisions of this ordinance shall, upon conviction thereof, forfeit and pay a fine of not more than two hundred dollars ($200.00), or be imprisoned in the county jail for not more than ninety (90) days."

In the above ordinance the "possession * * * [of a]

writing or printing * * * indicating an interest, share, bet or pledge in any pool, lottery, racing, contest" * * * is expressly prohibited, and contradistinguished from the making of a "book" or the handling of a "pool." Indeed, this prohibition of the possession of the indicia of, or means to, gaming, and even irrespective of the possessors' criminal intent, has been upheld by our courts as a valid exercise of the legislative power, separate and distinct from gaming itself, and as "a measure that is primarily preventive in character." *State* v. *Murzda,* 116 *N. J. L.* 219, 226; 183 *Atl. Rep.* 305, 309. Furthermore, the facts would indicate that the defendant was not a mere private bettor, but that he was engaged, partially at least, in the occupation of taking bets on these "contests" from a large number of individuals, whether he himself was a bettor with them therein or not, being immaterial.

In short, since it clearly appears that the amendatory ordinance, under which the defendant was convicted, is complete in itself and valid, despite the invalidity of the original ordinance, and the fact that the present ordinance does not expressly name a date for its taking effect, and since the facts show the defendant to have violated the same, the conviction under review will be affirmed.