**ROYAL CROWN BOTTLING CO.
v. MINUGH.**

No. 12327.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 7, 1951.

Rehearing Denied Dec. 19, 1951.

532

Henri L. Warren, Kemper, Wilson & Schmidt, and Ben F. McDonald, Jr., all of Corpus Christi, for appellant.

Hyde, Barber & Shireman, Corpus Christi, for appellee.

NORVELL, Justice.

This is a rather complicated proceeding (20 pages of transcript, 121 pages of statement of facts, and 83 pages of briefs) to determine whether a truck-motorcycle collision case should be tried in Nueces County where the suit was filed and the collision occurred, or in Bexar County where the defendant resides.

The court below overruled defendant's plea of privilege and, although not required to do so, the trial judge filed findings of fact and conclusions of law. Rule 385, Texas Rules of Civil Procedure. He found that the driver of defendant's truck had committed both a crime and a trespass in Nueces County which resulted in injury to the plaintiff, and concluded that venue properly lay in Nueces County under the provisions of exception 9 of Article 1995, Vernon's Civil Statutes.

In an able and well-prepared brief, appellant, William S. Marshall, doing business as Royal Crown Bottling Company, assails the sufficiency of the evidence to support various findings of the trial court. We have concluded that most of these attacks go to the weight of the evidence and no error is disclosed thereby. It is asserted that much of the testimony of Stanley B. Minugh (the plaintiff below and appellee here) was contradictory and that he was impeached by contradictory statements made prior to the trial of the case. It is asserted that no causal connection between appellant's acts or omissions and appellee's injuries was shown. Gunstream v. Oil Well Remedial Service, Tex.Civ.App., 233 S.W.2d 897; Gann v. Keith, Tex.Civ.App., 240 S.W.2d 822, in that it conclusively appeared that appellee's negligence was the sole cause of the collision and consequent injuries suffered by appellee. While appellant's arguments are persuasively presented, a careful examination of the evidence discloses that none of these contentions is well taken and that the trial judge was within his authority as the arbiter of the facts in finding that there existed a causal connection between the acts or omissions of defendant's truck driver and plaintiff's injuries.

The trial judge found that when defendant's truck approached an intersection of U. S. Highway 44 and a graveled road, the driver thereof, L. R. Barrett, made an abrupt left-hand turn from the right lane of the westbound portion of Highway 44, across the highway in front of plaintiff and that as a result, plaintiff's motorcycle struck

the truck. The judge also found that Barrett made the left-hand turn across the highway without giving any warning that he was going to make the turn and that the improper manner in which the turn was made was the proximate cause of the collision.

Under these findings it is clear that Barrett violated the provisions of Article 6701d, §§ 65(b), 68(a) and 68(b), which read as follows:

"Sec. 65. The driver of a vehicle intending to turn at an intersection shall do so as follows: * * *

"(b) Approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered."

"Sec. 68. (a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 65, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.

"(b) A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."

In 1947, the Legislature adopted House Bill No. 154 by Elizabeth Suiter, Acts 1947, 50th Leg. p. 739, which, insofar as pertinent here, reads as follows:

"CHAPTER 366

H. B. No. 154

"An Act amending the provisions of Article 1995, Subsection 9 of the Revised Civil Statutes of Texas, 1925; repealing all laws or parts of laws in conflict with such Section of said Article as hereby amended; and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That Article 1995, Subsection 9 of the Revised Civil Statutes of Texas, 1925, be and the same is hereby amended so that hereafter it shall read as follows:

"'Article 1995.

"'9. Crime or Trespass. A suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed, *whether committed by the defendant or by his agent or representative,* or in the county where the defendant has his domicile.'"

The words above italicized were added to Subsection 9 by this amendment.

Prior to the adoption of the Suiter amendment, it had been definitely held by the Supreme Court that in order to hold venue of a suit against a principal by reason of liability arising out of the commission of a crime by an agent or servant, it was necessary to show that the principal was a party to the crime or offense, either as an accomplice or otherwise. Austin v. Cameron, 83 Tex. 351, 18 S.W. 437; Mercer v. McCurley, 142 Tex. 197, 176 S.W.2d 923.

The purpose of the amendment was to change the rule above stated and provide that venue could be maintained against a principal in the county where his servant or representative had committed a crime, although it was not shown that the principal was a party to the crime, provided of course that it be proven that an agency relationship existed between the principal and the person who committed the crime.

Under the subsection prior to its amendment, venue as to William S. Marshall (Royal Crown Bottling Company) could not be maintained in Nueces County by reason of the crime committed by L. R. Barrett (the truck driver). However, it is clear that after the amendment, if it be valid, venue as to Marshall may be maintained in Nueces County by reason of the crime committed by Barrett; it being shown that at the time of the commission of the offense Barrett was the agent or representative of Marshall and acting within the scope of his employment.

Appellant asserts that the 1947 amendment of Subsection 9 of Article 1995 is invalid because the title thereto is defective in that it fails to comply with the requirements of Article 3, § 35, of the Constitution of Texas, Vernon's Ann.St., which provides that, "No bill * * * shall contain more than one subject, which shall be expressed in its title. * * *"

The title to the amendment here involved is of a particular type in that it refers to a subsection and article of the Revised Civil Statutes, which the Constitution expressly authorized the Legislature to promulgate. Article 3, § 43, of the Constitution of Texas. American Indemnity Co. v. City of Austin, 112 Tex. 239, 246 S.W. 1019.

In English & Scottish American Mortgage & Investment Co. v. Hardy, 93 Tex. 289, 55 S.W. 169, 170, the Supreme Court considered the validity of an act amending a statute providing for the creation of corporations which also contained a provision relating to permits of foreign corporations to do business in Texas. The title of the act involved read as follows: "An act to amend articles 641 and 642, chapter 2, title 21, of the Revised Civil Statutes of Texas relating to the creation of corporations." Laws 1897, c. 130.

Mr. Justice Williams, speaking for the Supreme Court, said: "The contention of plaintiff is that the last proviso, relating to permits to foreign corporations, is not embraced within the subject named in the title to the act. If we could disregard the reference in the title to the number of the article of the Revised Statutes to be amended, and look alone to the words 'relating to the creation of private corporations,' as expressing the whole subject of the act, it may be true that such expression would not be broad enough to admit provisions concerning the issuance of permits to foreign corporations. This it is unnecessary to decide, since, in view of the previous decisions in this and other courts, and of the course of legislation based upon their authority, it must be held that such a reference to the number of an article in a code, such as our Revised Statutes, is sufficient, in the title of an act amendatory thereof, *to allow any amendment germane to the subject treated in the article referred to.* Gunter v. [Texas Land &] Mortgage Co., 82 Tex. [496] 502, 17 S.W. 840; State v. McCracken, 42 Tex. [383] 384. Many decisions from other states to the same effect might be cited. The reason for the decisions holding this proposition must be that the naming of the article to be amended directs attention to all of the provisions therein, as the subject of the amending act, and that such provisions can be ascertained by reading the article to be amended. However questionable may be the practice, and the decisions by which it has been recognized as valid, it has been so long and so often followed that this court would not be justified in now holding it to be a violation of the constitution. The effect of the reference to the article to be amended is not restricted by the other language of the title to the act in question. Such other language is, as far as it goes, properly descriptive of the subject of the amended as well as of the amendatory act. It simply does not cover the whole of the subject; but the reference to the number of the article to be amended does include, as the subject of the amendatory act, the whole subject embraced by the provisions of the former. It is that article which the title proposes to amend, and not merely such parts of it as relate to the creation of corporations." (Italics ours.)

The subject of Subsection 9 of Article 1995 is the venue of "[a] suit based upon a crime, offense, or trespass". The provision added by the 1947 amendment was germane to this subject and hence the amendment must be accorded validity. Walker v. State, 134 Tex.Cr.R. 500, 116 S.W.2d 1076; 39 Tex.Jur. 95, 102; Statutes, §§ 44, 48.

It can not be contended that the title to the amendatory act is misleading in any way. 39 Tex.Jur. 100, Statutes, § 47.

The primary authority relied upon by appellant, Gulf Ins. Co. v. James, 143 Tex. 424, 185 S.W.2d 966, does not involve a title which refers to articles of the Revised Statutes, and is therefore not in point.

When applicable, the crime clause of Subsection 9 of Article 1995 as amended,

generally affords a clearer and more expeditious way or pattern for determining venue questions than does the trespass clause. For that reason we have discussed and determined the constitutional question presented relating to the 1947 amendment. We are, however, of the opinion that the trial court's findings also disclose a suit based upon a trespass. When the driver of a motor vehicle makes an abrupt left-hand turn across a highway without giving warning of his intention to do so, he commits an act of active negligence. In Jackson v. McClendon, 143 Tex. 577, 187 S.W. 2d 374, 376, it was said that, "Such act (to constitute a trespass) need not be inherently unlawful. It may be inherently right if properly performed, and yet be, if performed in a culpably negligent manner resulting in injury to another, a misfeasance or trespass as to such person." This language of the Supreme Court is applicable to the affirmative act of making a left-hand turn which becomes wrongful because executed in an improper way.

The order appealed from is affirmed.