458 P.2d 84

Pete VALENTE, Petitioner-Respondent,

v.

Warner C. MILLS, Commissioner of Law Enforcement, State of Idaho, Defendant-Appellant.

No. 10257.

Supreme Court of Idaho.

June 30, 1969.

Rehearing Denied Aug. 18, 1969.

Robert M. Robson, Atty. Gen. of the State of Idaho, and Mack A. Redford, Deputy Atty. Gen., Boise, for defendant-appellant.

Thomas A. Mitchell, Coeur d'Alene, for petitioner-respondent.

McFADDEN, Chief Justice.

This action was instituted by the respondent Pete Valente to set aside an order suspending for ninety days respondent Valente's motor vehicle operator's license, which order of suspension was issued by the appellant commissioner of law enforcement. The reason given in the order for the ninety day suspension was "You have been convicted of DRIVING WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUOR."

On August 5, 1967 Valente was arrested in Coeur d'Alene for alleged violation of that city's ordinance prohibiting driving while under the influence of intoxicating liquor. After his arrest he refused to submit to a chemical test to determine the amount of alcohol in his blood.

On August 11, 1967 the appellant issued a notice to Valente that his operator's license was to be suspended under the provisions of I.C. § 49–352 for his refusal to submit to a blood test. Valente sought a hearing before the commissioner, which was held on September 20, 1967. On September 29, 1967 the commissioner issued his order suspending Valente's driving privileges for a ninety day period commencing September 29, 1967. Valente appealed to the district court from that determination (I.C. § 49–334) and the district court stayed the suspension pending hearing. The stay continued until December 1, 1967 at which time Valente voluntarily dismissed the appeal and the ninety day suspension commenced to run.

On the same day, December 1, 1967, Valente forfeited a bond he had posted in the police court on the original charge of operating a motor vehicle under the influence of intoxicating liquor. On December 10, 1967 the commissioner issued another order further suspending Valente's driving privileges for an additional ninety days based on the forfeiture of the bond. In his order, the commissioner specified this second ninety day suspension was to become effective February 28, 1968, the date the previous suspension expired.

On December 19, 1967 Valente requested a hearing before the commissioner on this second suspension, contending that the commissioner was unlawfully attempting to "tack" a subsequent suspension to the previous suspension. He argued there was no authority for such action. His request for a hearing was denied on the ground that it was not a proper subject for an administrative hearing.

Following this denial, the present action was instituted. By stipulation it was agreed that the facts set forth in Valente's petition were true, and the cause was submitted to the court on briefs. The trial court filed its memorandum opinion, and later entered findings of fact, conclusions of law and judgment ruling that portion of I.C. § 49–330(b), which provides that forfeiture of bail is equivalent to a conviction, unconstitutional. The judgment also nullified the order suspending Valente's driving license beyond February 28, 1968.

This appeal raises an issue as to the validity of I.C. § 49–330. At the outset it is to be noted that this particular statute since its origin in 1935 (S.L.1935, Ch. 88, § 30, p. 164) has been subjected to such continuous and successive "legislative potshots" that even its existence has been brought into question. After its adoption it was amended in 1959 (S.L.1959, Ch. 236, § 1, p. 505), 1961 (S.L.1961, Ch. 190, § 1, p. 283), and twice in 1963 (S.L.1963, Ch. 265, § 1, p. 675; and S.L.1963, Ch. 362, § 2, p. 1032). Both of the 1963 amendments carried emergency clauses. In 1965, the legislature again amended the act (S.L.1965, Ch. 97, § 1, p. 180). The 1965 act in § 2 thereof provided: "That the footnote to Section 49–330, Idaho Code, which was enacted as Chapter 265, Idaho Session Laws (1963), be, and the same is hereby repealed." In 1967 the legislature again took a double shot at the act when it adopted S.L.1967, Ch. 353, p. 996, and also Ch. 378, p. 1113.

When two acts, each amending a previous act, are passed at the same session of the legislature and the two amendatory acts conflict with each other, but the latter act is reconcilable with the original act, for the purpose of determining the intention of the legislature, the first amendatory act will be deemed to have been superseded and repealed by the latter. Buck v. Board of Trustees, 28 Idaho 293, 154 P. 372 (1915); Peavy v. McCombs, 26 Idaho 143, 140 P. 965 (1914); 2 Sutherland, Statutory Const. § 5201, p. 532 and § 5202, p. 539 (3d ed. 1943). The two acts passed in 1967 are inconsistent with each other and hence the latter act, being Ch. 378, p. 1113, is the one to be relied upon. This latter act is the one that has been accepted by the Idaho Code Commission for publication in 9 Idaho Code, p. 69 (1967 ed.), as I.C. § 49–330

An additional problem is presented by the publisher of the 1963 Session Laws who casts doubt upon the legislative action taken in enacting Chapter 362, S.L.1963, p. 1032, which chapter originated as House Bill 268. After passage in the house it was considered by the senate and on March 12, 1963, was voted upon and passed (1963 Senate Journal, p. 751). The journal then discloses that Senator Wetherell, who voted for the bill's passage, gave notice that he might move to reconsider the vote, whereupon the president of the senate ordered the bill held at the desk for one legislative day. The journal for March 13 reflects that Senator Wetherell asked for unanimous consent that the vote by which the bill passed the senate be reconsidered. There being no objection, the president declared the bill would be reconsidered. Senator Roden then asked unanimous consent that the bill retain its place at the "Tenth Order of Business" (motions and resolutions) for an additional day, which request was granted. The journal is then silent concerning this bill until March 15 when the following entry appears:

"At this time the president announced that House Bill No. 268, which had been held at the desk for possible reconsideration, would be transmitted to the House.

There being on objection, the Senate returned to the Tenth Order of Business."

The journal, therefore, does not reflect whether the vote on House Bill 268 was actually reconsidered or whether, if reconsidered, the bill was passed or rejected. For this reason it is contended that the bill was not properly enacted by the legislature and is therefore void. We find it unnecessary, however, to determine whether the bill was validly enacted in 1963 for, assuming its invalidity, it is our opinion that I.C. § 49–330 is nevertheless a valid enforceable law by virtue of the 1965 and 1967 amendments to the allegedly invalid 1963 law.

Although there is some authority to the contrary, the rule of statutory construction followed by a majority of the states is that

"* * * statutes undertaking to amend prior ones which were unconstitutional merely because the legislature had failed to comply with constitutional requirements in their enactment, and not for want of power in the legislature to adopt them, * * * [are] valid laws, taking effect from their passage." English & Scottish American Mortgage and Investment Co. v. Hardy, 93 Tex. 289, 55 S.W. 169 (1900).

To the same effect are State ex rel. Grozbach v. Common School Dist. No. 65, 237 Minn. 150, 54 N.W.2d 130 (1952); Forbes v. City of Houston, 304 S.W.2d 542 (Tex. Civ.App.1957); Board of Commissioners of City of Newark v. Grodecki, 21 N.J. Misc. 241, 33 A.2d 115 (1943); Ex Parte Hensley, 162 Tex.Cr.R. 348, 285 S.W.2d 720 (1956); Walsh v. State, ex rel. Soules, 142 Ind. 357, 41 N.E. 65 (1895); State v. City of Cincinnati, 52 Ohio St. 419, 40 N. E. 508 (1895); Allison v. Corker, 67 N.J. L. 596, 52 A. 362 (1902).

Similarly, Sutherland states in his treatise on Statutory Construction that

"Probably a majority of the courts have rejected the theory that an unconstitutional act has no existence, at least for the purpose of amendment. The unconstitutional act physically exists in the official statutes of the state and is there available for reference, and as it is only unenforceable, the purported amendment is given effect. If the law as amended is constitutional, it will be enforced." 1 Sutherland, Statutory Construction § 1904, p. 335, (3d ed.1943), citing cases.

When the legislature amends a prior statute, it has before it the complete text of the statute to be amended. Idaho Constitution Art. 3, § 18. If the legislature enacts the amending bill according to proper procedure and the bill as amended is complete in itself and constitutional, there is an expression of legislative intent upon the subject legislated upon, and the defects in the prior statute are remedied by the proper enactment of the amending stat-

ute. As the Texas Supreme Court stated in English & Scottish Mortgage Invest-ment Co. v. Hardy, supra,

"It is sometimes said, broadly, that, since an unconstitutional statute is void, it cannot be amended, and that hence an-other statute attempting an amendment of it is void. It is doubtless true that the amendment of an unconstitutional law does no [sic] impart efficacy to it, but it by no means follows that the new statute is void. It may contain all the elements of a valid enactment, and there-fore may have the force of law from its adoption. The mere fact that it attempts to amend an invalid statute cannot de-feat it, when it is itself a complete ex-pression of legislative will, made in con-formity with constitutional require-ments." 55 S.W. at 172.

In the present case I.C. § 49–330 was amended in 1965 and 1967 after the alleg-edly invalid enactment in 1963. No defect appears in the enactment of the 1965 or 1967 amendments, and consequently it is our opinion that 1967 S.L. Ch. 378, p. 1113, codified as I.C. § 49–330, being the last ex-pression of legislative intent, was the law in effect at the time the events involved in the present case occurred.

Having reached the conclusion as to the viability of I.C. § 49–330, the next problem is whether the commissioner's ninety day suspension order of December 10, 1967 is valid. This order relied upon I.C. § 49–330(2) as authority for its issuance and gave as a reason for applying that provi-sion that Valente had been convicted of driving while under the influence of intox-icating liquor. The recitation of the sec-tion number, however, is incorrect. The order must have had reference to I.C. § 49–330(a), par. 2, the pertinent provisions of which are:

"(a) The department is hereby autho-rized to suspend the license of an opera-tor * * * upon a showing by its records * * * that the licensee:

1. * * *

2. Has been convicted in any court in this state of an offense against a munici-pal ordinance which would have been grounds for suspension or revocation of license had the charge been prosecuted under a state law;

3. * * *." Etc.

Valente was not convicted of any offense under the city ordinance. He forfeited a bond and on the basis of the bond forfei-ture the commissioner contends that anoth-er portion of I.C. § 49–330 comes into ef-fect, as follows:

"The term 'conviction' as herein used shall mean a final conviction, also a for-feiture of bail or collateral deposited to secure a defendant's appearance in court, which forfeiture has not been vacated, shall be equivalent to a conviction."

This latter quoted portion of the statute is sandwiched in between other provisions pertaining exclusively to the "violation point count" system which is another basis for the suspension of an operator's license.

■ To construe the statute in such a way as to relate a forfeiture of bail or col-lateral to mean the same as a "conviction," which is required for suspension under I.C. § 49–330(a), pars. 1, 2 and 6, does vio-lence to the language and arrangement of the section itself. Paragraph (a) of the section authorizes the suspension of opera-tors' licenses; subparagraphs 1 through 7 then follow setting forth the grounds for suspension. Subparagraph 7 provides

"Has a driving record which shows a violation point count of 12 or more points in any consecutive twelve-month period."

Subparagraph 7 is then followed by a pur-ported paragraph "b," consisting of three additional paragraphs, the first of which defines the term "violation" (which ap-pears only in subparagraph 7); the second paragraph then defines "conviction," and the third deals with the means of determin-ing the "violation point count," and pro-vides that

"conviction of any charge involving a moving traffic violation shall be given a

value of one (1) point for less serious violations to four (4) points for more serious violations; provided, that conviction for only one (1) violation arising from one (1) occasion of arrest or citation shall be counted in determining the violation point count for the purposes of this section."

The relating of a bond forfeiture to conviction in this provision can only have reference to a determination of "violation point counts."

█ It is thus the conclusion of the court that the order of the commissioner of law enforcement suspending respondent Valente's operator's license on the basis of a bond forfeiture was invalid. The judgment of the trial court is affirmed, not on the basis of unconstitutionality, but for the reasons expressed herein. Salvis v. Lawyer, 73 Idaho 469, 253 P.2d 589 (1953); Knutson v. Huggins, 62 Idaho 662, 115 P. 2d 421 (1941); In re McVay's Estate, 14 Idaho 56, 93 P. 28 (1907); Union Life Ins. Co. v. Brewer, 228 Ark. 600, 309 S. W.2d 740 (1958); In re La Rue's Estate, 53 Ill.App.2d 467, 203 N.E.2d 47 (1964); Davis v. Agents Finance Corp., 249 Miss. 839, 164 So.2d 449 (1964).

No costs allowed.

McQUADE, DONALDSON, and SPEAR, JJ., and FELTON, D. J., concur.