H. E. CHILES, JR., DOING BUSINESS AS THE WESTERN COMPANY v. FRED V. GOSWICK.

No. A-2358. Decided November 23, 1949.
(225 S. W., 2d Series, 411.)

*Max E. Ramsey,* of Andrews, *Herbert Marshall* and *Strasburger, Price, Holland, Kelton & Miller* and *Hobert Price,* all of Dallas, for appellant.

*John J. Watts* and *Martelle McDonald,* both of Odessa, for appellee.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

The certificate from the Court of Civil Appeals, Eighth Supreme Judicial District, at El Paso recites:

"Appellee, Fred V. Goswick, received serious injuries from muriatic acid which was sprayed into his eyes during the acidizing of a well of the Phillips Petroleum Company by appellant, H. E. Chiles, Jr., d/b/a The Western Company, on January 9, 1948, in Andrews County. He filed this suit against appellant in the District Court of Andrews County to recover damages for such injuries. Appellant filed a plea of privilege to be sued in Midland County, the county of his residence. By his controverting plea, appellee sought to maintain venue in Andrews County under Section 9 of Article 1995, R. C. S. on the ground that appellant had committed a trespass in Andrews County. The specific allegation on which he relies is:

'That the defendant herein was and is guilty of an active trespass within the meaning of said Section, and of active negligence which was a proximate cause of all the damages sued for herein, when said defendant negligently placed 3500 lbs. of pressure on a worn, used and defective line which was not sufficient to withstand said pressure.'

"Trial to a jury resulted in finding to the effect that appellant's employees placed thirty five hundred pounds of pressure upon a defective check valve incorporated into a line, or tube, extending from the pump to the well, through which the acid was pumped immediately before the valve came apart and that such act constituted negligence, which was a proximate cause of the valve being torn apart; also, that appellant's employees, in the exercise of ordinary care, should have known that the check valve was defective and that their failure to discover that the valve was defective constituted negligence, which was a proximate cause of the check valve being torn apart. On such findings the trial court overruled appellant's plea of privilege."

The Court of Civil Appeals in its opinion summarized the testimony shown by the statement of facts and held that it disclosed no evidence of a trespass, as that term is used in exception 9 of the Venue Statute, Article 1995, R. C. S., and that the trial court should have sustained appellant's motion for a directed verdict and ordered the venue of the case transferred to Midland County. On rehearing, the court has certified to us this single question:

"Did we err in holding that there is no evidence shown by the record in this case to raise an issue of active negligence or of a trespass committed by appellee in Andrews County?"

Exception 9 of Article 1995, R. C. S., reads as follows:

"Crime or trespass.—A suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed, or in the county where the defendant has his domicile."

An answer to the question certified to us is afforded by an application of the decision in Ricker, Lee & Co. v. Shoemaker, 81 Texas 22, 16 S. W. 645, the leading case on the construction of the meaning of the word "trespass," as used in the exception, to the facts disclosed by the record.

The first Legislature of the State of Texas, in 1846, enacted a statute to regulate proceedings in the district court. Exception 7 of that statute provided:

"Where the defendant has committed some crime or offense for which a civil action in damages may be commenced, on which cases suit may be instituted in the county where the crime or offense was committed, or in the county where the defendant has his domicil."

That Act was in substantially the same language as an Act of 1836, establishing the jurisdiction and powers of the district courts in the Republic of Texas. This court, in construing that Act, in Illies v. Knight, 3 Texas 312, held that the word "offense," as used therein, was synonymous with that of "crime," and that to bring a case within that exception the act or acts complained of must amount to an indictable offense. Thereafter, in 1863 (Laws of Texas, Vol. 5, p. 664), the Act was amended to read as follows:

"Seventh, where the defendant has committed some crime, or offence, *or trespass*, for which a civil action in damages may be commenced, in which cases, suit may be instituted in the county where the crime or offence *or trespass* was committed, or in the county where the defendant has his domicile." (Italics ours.)

That Act, as amended, came before this court for construction in Hill v. Kimball, 76 Texas 210, 13 S. W. 59, and it was held that the statute applied to trespass on the case, as known to the common law, and no distinction was there drawn between an action based upon a negeligent omission and one based upon the wrongful application of force.

The exception was before the court again in Ricker, Lee & Co. v. Shoemaker, 81 Texas 22, 16 S. W. 645, supra. In that case the court gave a more restricted construction of the meaning of trespass, as used in the statute. It took particular notice of the provision that the exception covered a trespass that was "committed" in a given county, and limited the word "trespass" "to embrace only actions for such injuries as result from wrongful acts willfully or negligently committed, and not those which result from a mere omission to do a duty." In the opinion in that case it was stated that when the case of Hill v. Kimball, supra, was under consideration, the distinction between injuries resulting from an act and those resulting from an omission to act did not present itself to the minds of the justices. From that decision has grown the oft used expression that, in order to constitute a trespass within the meaning of the statute, the negligence must be active and not merely passive.

■■ In this case the burden rested upon appellee (plaintiff) to prove, not only that he sustained injuries through the negligence of appellant, but also the particular act of negligence on the part of appellant upon which he relied in order that it might be determined whether such act was more than a mere omission to perform a duty. He cannot rely upon the rule of evi-

dence denominated *res ipsa loquitur* as the basis of a holding of trespass within the meaning of this statute. This for the reason that that rule rests upon a presumption, and a court could not add to a presumption of negligence the further presumption that that negligence was active. Standard Accident Insurance Co. v. Pennsylvania Car Co., 15 S. W. (2d) 1081; Amberson v. Anderson, 43 S. W. (2d) 120; Odom v. Parker, 173 S. W. (2d) 328. An examination of the evidence introduced upon the hearing of the plea of privilege has led us to the conclusion that no specific act of negligence, either active or passive, was proved on the hearing, and that, if that evidence would fix liability upon the appellant, it would be under the rule of *res ipsa loquitur*.

The findings of the jury upon which the trial court overruled the plea of privilege are summarized in the certificate. The basic fact of those findings is that the check valve was defective. There is no evidence of that fact in the record. There is some testimony from two oil field workers to the effect that 3500 pounds of pressure was greater pressure than was generally applied in acidizing wells in the section where this accident occurred, but there is no testimony from those witnesses, or any other witnesses, that the check valve was defective, or that 3500 pounds pressure was excessive on a check valve like that used in this case. The only witnesses in the case were those called by the appellee. Three times he called the appellant as a witness. On one of those occasions he proved by appellant that the gauge was not located between the pump and the check valve, but between the check valve and the well connections. From that evidence he sought to develop the theory that the negligence consisted in the gauge's being misplaced. From another witness he undertook to make proof that the pump was defective. One of the witnesses, on cross examination, spoke of the possibility of an obstruction in the line. The appellant, in answer to a question directed at him by the attorney for the appellee, testified that by stretching his imagination he could spend the rest of the afternoon mentioning things that could have caused the explosion which injured the appellee.

The opinion of the Court of Civil Appeals accompanying the certificate, which we assume will be published, (225 S. W. 2d 407) summarizes much of the evidence in detail, and we refer thereto as a supplement to what is here written. We agree with the conclusion of that court, and, therefore, we answer the certified question, "No."

Opinion delivered November 23, 1949.