## GUNSTREAM v. OIL WELL REMEDIAL SERVICE et al.

No. 14248.

Court of Civil Appeals of Texas. Dallas.

Oct. 20, 1950.

Rehearing Denied Nov. 17, 1950.

Cedric G. Hamlin, Blakeley & Blakeley, and John F. Harrison, all of Dallas, for appellant.

Joe A. Keith, Sherman, for appellees.

BOND, Chief Justice.

This is an appeal from a judgment of the District Court of Collin County, Texas, sustaining the defendants' pleas of privilege and transferring the trial of the cause to the District Court of Ector County, Texas, the domicile and place of business of the respective defendants,—none of whom reside in Collin County.

It is a well established rule that a person's right to be sued in the county of his residence is a valuable right and should never be abridged except by clear and convincing proof that the cause of action comes under some "exception" to the rule. Art. 1995, Vernon's Ann.Civ.St., in part, reads: "No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases * * *." Among the 30 or more exceptions, No. 9 (pertinent here), in effect, provides that a person may be sued for damages *resulting from* a trespass in the county where the trespass was committed. The word "trespass" within the meaning of the statute embraces only actions for injuries resulting from wrongful acts of omission or commission, willfully or negligently committed; and such acts, willfully or negligently committed, must be the efficient or moving cause of the complainant's injury and damage. The mere fact that a trespass or crime was committed, without being the agency producing the effect, does not come under the exception. There are two very necessary elements that must be proven to establish venue: (1) A trespass or crime willfully or negligently committed, and (2) that such trespass resulted in damage. See Meredith v. McLendon, Chief Justice, et al., 130 Tex. 527, 111 S.W.2d 1062, and authorities there cited.

The burden is upon the plaintiff to prove the efficient elements to sustain venue of the suit against defendants' pleas of privilege. " * * *: The importance in our jurisprudence of according to every citizen his right to be sued in the county of his residence, except in cases made clear by statutory provisions; the quantum of proof required at the hands of one who seeks to maintain venue elsewhere under exception 9 to Article 1995; that when one of the named exceptions to exclusive venue is relied upon the party asserting it must allege and prove the essential elements of that exception to defeat the prima facie right to a change of venue presented by the plea of privilege; the commission of a crime, offense or 'trespass' cannot be assumed in favor of a plaintiff who relies upon exception 9 to maintain a suit in the county where filed when the privilege is claimed; in making proof by plaintiff to sustain venue, the same degree of the preponderance of the testimony prevails as it does in any other civil suit; a determination by the court of controverted fact issues is controlled by the general rules of weighing testimony in venue actions the same as in ordinary suits on the merits." Rasberry et al. v. Jones, et al., Tex.Civ. App., 195 S.W.2d 947, 950.

Another rule of law long recognized in this State is that where a case is tried to the court, as here, and no findings of fact or conclusions of law are filed, the judgment will be affirmed if there is any ground to support it, upon any theory in the case; every issue in the case must be resolved in support of the judgment. So, too, where the evidence is uncontroverted; and where its weight and credibility on the issues involved raise a reasonable doubt in the mind of the judge, as the trier of facts, his judgment must be affirmed. The filing of the plea of privilege by defendant constitutes prima facie proof for a change

of venue, Rule 86, Texas Rules of Civil Procedure; and plaintiff's controverting plea constitutes the pleadings upon which the venue issue rests.

■ Plaintiff's suit is for damages occasioned by the death of her son, Jerome W. Gunstream, resulting from a head-on collision between an automobile in which he was riding and the defendants' truck driven by defendants' employee, Willie Patrick, on a public highway in Collin County. At time of the collision the truck was going south, Gunstream's automobile was going north. The truck was loaded with oil well iron or steel pipe, and attached thereon was a 3½ inch pipe, about the length of the truck bed—a "gin pole."

The defendants' pleas of privilege were in statutory form, alleging their respective residences in Ector County; and to the venue issue, plaintiff alleged in her controverting affidavit, pertinent here, that at the time of the collision the defendants, their agent and employee, were guilty, among other things, of (1) negligently operating the truck with a bed more than 80 inches in over-all width without two clearance lamps,—one at or near the front and one at the rear, on each side—in violation of the laws of this State, Sec. 114 of Article 670ld, V.A.C.S., provides: "* * * (b) On every bus or truck eighty (80) inches or more in over-all width, in addition to the requirements in subparagraph (a): On the front, two clearance lamps, one at each side. On the rear, two clearance lamps, one at each side. On each side, two side marker lamps, one at or near the front and one at or near the rear. On each side, two reflectors, one at or near the front and one at or near the rear * * *"; (2) in operating the truck with a protruding metal "gin pole" about 3½ inches in diameter, without warning lights thereon; (3) in operating the truck not equipped with side reflectors; (4) in operating the truck on the south side, and too near the center, of the highway; (5) in operating the truck, 67¾ inches in width at front bumper and 93½ inches in width at the bed behind the cab, without any warning lights or reflectors on the bed. Numerous other negligent acts of omission and commission are alleged, but as no contention is here made that there is evidence to sustain such issues, we pretermit further reference thereto. All such negligent acts relied on to maintain venue in Collin County, taken singly and collectively, directly and proximately were alleged to have caused the death of the deceased.

On the hearing of the venue issues, virtually all of the evidence adduced by plaintiff was admitted over appellees' objections that such evidence was based on and consisted of hearsay testimony, unsupported opinions, and conclusions of witnesses not shown to be qualified; and, for the fact that the trial was to the court without the aid of a jury, any error in the admission or rejection of the testimony presents no reversible error, even though such might otherwise be erroneous on trial to the merits. The trial judge was quite liberal in allowing the plaintiff wide latitude in presenting her evidence, apparently recognizing early in the trial that the proof on the issues would rest on circumstantial evidence. So, it was. There were no witnesses to the collision other than Willie Patrick, operator of defendants' truck. He, also, was made a defendant in the suit, along with the other defendants, but not served with citation; hence made no personal appearance, was not present at the trial and not called to give evidence as a witness; and there is no showing that he was still in the defendants' employment, or available as a witness as would ordinarily impute testimony adverse to the defendants. The defendants offered no testimony in rebuttal to the facts and circumstances presented by the plaintiff. Thus the trial court was put to the task of arriving at an ultimate conclusion without any direct and positive proof that the acts committed were the direct and proximate cause of the collision and damage.

We are of the opinion that the testimony offered by plaintiff falls far short of being sufficient to establish negligence on the part of the defendants resulting from "trespass" as a matter of law. Most of the evidence of any probative value was related by interested witnesses, brothers-in-law of the plaintiff. Such testimony depicted only

the surrounding conditions, markings and abrasions on the highway surface where the collision occurred, and the condition of the truck and automobile; thus presenting conclusions and surmise of negligence and trespass and proximate cause for the determination of the trial court. One of the brothers-in-law, first called, testified that some two hours after he was informed about the collision he drove by the scene of the accident, stopped, but stayed in his car; that, as he drove by, going north, he recognized his nephew's car in a ditch on the east side of the road; that it was badly "tore up"—the side door practically torn off and windshield out; that he went on to his brother's, farther north, stayed there about two hours, then came back to scene of the accident, stayed about thirty minutes, and went on to his home. There were many people there, among whom were State traffic officers. That about seven o'clock that morning he returned to the scene and, at that time, saw fresh black and plain "skid marks" on the paved road extending to and across the center line, where he was advised the collision occurred. Witness described the skid marks as two parallel marks as of dual wheels; that he observed dents in the pavement, as if "something" had scraped out part of the surface of the road. He further testified that he went around the truck, viewed it, but did not see any clearance lights or reflectors on the bed. The other brother-in-law visited the scene of the collision, about noon, the next day after the occurrence; brought with him a photographer from Dallas; about 25 or 30 pictures were taken, only five introduced in evidence. He testified as to various skid marks on the paved road, substantially as related by his brother, and, in addition, described the condition of some truck parked in a garage in the City of McKinney, which truck had been pointed out to him as the one involved in the collision. He gave evidence of the damaged condition of the truck, on the back part of the left fender and the left running board just right to the cab, which he testified was "obviously" the point of impact between the truck and deceased's automobile. He also testified, as did his brother, that the bed of the truck was 93½ inches over-all in width, and that he saw no warning lights on or at the rear, or on either side of the truck or bed; that the left rear wheel of the truck had a large dent, or deep marking, the wheel frame bent. In line with his testimony, he identified pictures of the truck which he had been told was the truck involved in the collision, depicting the damages thereto pretty much as related by the witnesses. The pictures were introduced, showed no evidence of damage to the bed of the truck; only to its left front fender and. running board opposite left front door of the cab, and the dented, or bent rear left wheel and the condition of the road surface at, or near, the place where the photographer was told the collision occurred. A Mr. Cox testified for plaintiff, stating that his wrecker-driver, Norman Best, went for the truck, brought it to his garage in McKinney, and that he knew nothing about what transpired at the place of the accident. All that he did know or testify to was that the truck had been brought to his place of business in a damaged condition and he had observed the rear part of the left fender was torn nearly off and the left running board considerably damaged.

There is no positive evidence from which it may reasonably be said, as a matter of law, that the width of the truck bed (93½ inches) or the absence of lights or reflectors on the truck bed (if there were none), were proximate causes of the collision; or that the truck bed evidences any injury from which it may be concluded, as a matter of law, that the point of contact by decedent's automobile was at the truck bed's over-lap; or that the skid marks, dents, and abrasions on the pavement were made prior to the collision, evidencing a crime or trespass. It might well be concluded that all of the evidentiary facts and circumstances were the result of the collision of the two vehicles, and not of a crime or trespass committed before the collision. The truck being loaded with oil well pipe and a "gin pole" (a device attached to the truck for hoisting or lifting the pipe), it may well be concluded that the pipe and pole, having been dislodged from the truck and scattered over the roadway, caused the damaged road condition as related in evidence; al-

so, the rear left wheel of the truck, having been bent or broken by the collision, may well have caused the truck to swerve to the left-hand or east side of the road, making the wheel skid marks, which the witness described, extend to and across the center of the road. At any rate, such evidence does not prove ipso facto that the truck was in fact on the left-hand side, or had been driven on the left-hand side of the center of the road before the collision occurred. True, such evidentiary matters and circumstances were for consideration of the trial court in determining whether or not the truck driver was guilty of crime or trespass prior to and at the time of the collision, and whether or not a trespass or crime was committed and proximately caused the collision and the death of the decedent. We realize that every case of this nature must be determined on its own particular facts. The trial court thus having determined the issues against appellant, entering judgment accordingly, such is binding on this Court.

All of appellant's assignments are overruled; the judgment below is affirmed.