## CAPPS v. DODD.

### No. 3006.

Court of Civil Appeals of Texas. Waco.

Jan. 24, 1952.

Rehearing Denied Feb. 21, 1952.

O. O. Touchstone, Dallas, for appellant.

Scott, Wilson & Cureton, Waco, Gean B. Turner, Cleburne, for appellee.

TIREY, Justice.

This is an appeal from an order overruling appellant's plea of privilege to be sued in Tarrant County, the county of his residence. The cause was tried without the aid of a jury and there was no request for findings of fact and conclusions of law and none was filed.

The judgment of the court is assailed on four points. They are substantially: (1) No evidence was tendered which would sustain a finding that defendant's employee committed a trespass in Johnson County; (2) that the evidence tendered is insufficient to sustain a finding that the employee committed a trespass in Johnson County; (3) that the judgment of the court was contrary to the overwhelming weight and preponderance of the credible evidence tendered; and (4) there was no evidence that defendant's employee violated Art. 6701d, Sec. 93(a), Revised Civil Statutes of Texas, Vernon's Ann.Civ.St. art. 6701d, § 93 (a).

Appellee brought the action in the district court of Johnson County to recover $5000 because of injuries which he claimed he sustained as a direct and proximate result of the negligence of appellant's agent in the operation of a motor vehicle in Johnson County on October 25, 1950.

Appellee, in his original petition, alleged substantially that on October 25, 1950, plaintiff and James W. Morgan were going in a northerly direction on the right hand side of the traveled portion of the highway leading from Venus to Mansfield, Texas, and that on the occasion in question, when they reached a point about two miles north of the town of Venus the defendant's agent, who had parked on the right side of the road, suddenly came on to the road in front of them and then suddenly stopped the truck he was driving, causing plaintiff's car to run into the defendant's truck with such violence as to cause the damages and injuries herein complained of; that appellant was guilty of acts of negligence, one or more, or all of which acting separately, or concurrently, were the proximate cause of his injuries. Specifically they are: (a) the defendant's driver operated said truck on said heavily traveled highway without keeping a proper lookout; (b) the defendant's driver suddenly and without warning came from the right side of the highway on to the highway immediately in front of the car in which plaintiff was riding and then stopped suddenly without warning; and (c) the defendant's driver came on to the highway suddenly without giving any sign or signal that he was going to come on to the highway.

In appellee's controverting affidavit we find the following allegations: "The defendant, through his agent and servant parked the motor truck in question upon the improved or main traveled portion of a public highway, outside of an incorporated city and town, to-wit, the public highway leading between the towns of Venus and Mansfield in Johnson County, Texas, when it was possible to park such vehicle at a point standing off of the improved or main traveled portion of such highway; and in so doing the defendant committed a crime and trespass in Johnson County, Texas. The exception to the exclusive venue in the county of the residence invoked by the plaintiff in this case is Section 9 of Article 1995 of the Revised Statutes of 1925 of Texas as amended by Acts of 1927, Fortieth Legislature, first called session, page 197, chapter 72, section 1, Vernon's Ann. Civ.St. art. 1995, § 9. * * * Plaintiff refers to its original petition filed in this case and adopts the same and the allegations therein contained as a part of this pleading as if copied herein in full and attaches said original petition hereto and marks same Exhibit 'A'."

Appellee Dodd testified to the effect that he was driving his Packard car and was accompanied by James W. Morgan and he was proceeding in a northerly direction on a farm to market highway and when he first saw appellant's car it was parked on the right side of the road; that when he was about 20 or 30 feet from appellant's car that appellant began to pull out on the highway; that when he first saw the closed panel truck it was on the right hand side of the highway and that he was something like 100 yards from it; that it was stopped; that it was down in a swag. He testified specifically: "Just before I got to him, I guess 20 or 30 feet from him, he shot out, so I blowed my horn and got on my clutch and brakes, and then it looked like he just stopped, and I hit him. And I didn't know anything else.

"Q. He pulled out and then he stopped? A. Yes, sir, and then stopped.

"Q. And about how far were you from him when he first begun his movement to pull out on to the highway? A. About twenty or thirty feet.

"Q. What are the facts as to whether he just eased out into the highway or came abruptly into the highway? A. It looked like he just shot out into the highway.

"Q. Then did you say he immediately stopped his vehicle? A. It looked to me like he just stopped. I blowed my horn and it looked like he just stopped, and I hit him. It was done just like that. (snaps his fingers) * * *

"Q. With reference to the black part or the macadamized portion of the highway, where was this pickup or panel truck located? A. It was down in a swag. There is a swag down there. You go down sort of a slope and then go up another one, and he stopped in the middle of this slope, that is where it was.

"Q. With reference to the black portion of the highway, was all four wheels on the highway? A. No, sir, it was over on the side setting next to the gravel, or up to the edge of the pavement.

"Q. Was there plenty of room at the time you saw him and was approaching him there for you to drive between it and your own middle line, if there had been one on your right side of the highway? A. You mean on the right hand side or the left hand side?

"Q. As it was originally situated over there, was there enough room for you to go on down the highway, if it had not moved? A. Yes, sir, I could have pulled around him, yes.

"Q. Were any of his wheels to his panel truck on the macadamized portion of the highway when you first saw it? A. I couldn't tell. I couldn't swear the wheels were setting on the highway. They were on the highway or were setting right at the edge of it.

"Q. If it was on the highway at all the wheels were just on the edge of the highway? A. Yes, sir."

The driver of the panel truck testified to the effect that he was out on his route on the date of the accident and shortly before the accident some merchandise fell down from a rack and he pulled off the road in order to place the merchandise in the proper rack; that he had pulled off as far as he could and remained there probably a minute; that he had started back on the road at an angle when plaintiff's automobile collided with the rear of his truck; that his truck was moving very slowly, at the rate of 10 or 15 miles per hour; that the truck was equipped with a rear view mirror on the left and right sides.

"Q. Before you started ahead, did you look in your rear view mirror? A. Yes, I glanced in it but I didn't see anything. However, it could have been behind the truck at an angle, it could have been behind me and I not seen it.

"Q. Then did you start out in low gear at an angle, like you showed the court, on to to the highway? A. That's right.

"Q. Had you gotten on the highway when this man ran into the back of your panel truck? A. I am not sure about that. I was almost back if I wasn't.

"Q. And the first time you knew of his presence was when he struck you in the back? A. Yes, sir.

"Q. About how fast were your moving towards the north when you were struck? A. I don't know exactly how to judge that. I imagine ten or fifteen miles an hour.

"Q. And you hadn't shifted into second gear? A. I had just reached over to get second.

"Q. But you were still in first, is that right. A. Yes, sir. * * *

"Q. Before you pulled on to the highway did you look into that mirror? A. I don't know whether I did or not. I think I did.

"Q. And did you see these people coming behind you? A. I did not.

"Q. How far can you see from the point where you were parked south behind you? A. I would say a half mile.

"Q. How soon after you pulled off the highway were you collided with? A.

Just from the time I could finish picking up those things and starting up again. And I probably had moved thirty or forty feet.

"Q. Before you were struck? A. Yes, sir.

"Q. You were struck within a distance of thirty or forty feet and you didn't see anybody coming from behind you? A. I don't suppose I had looked because I didn't see anyone when I went angling back. There was plenty of room then to come by me.

"Q. You just didn't look when you drove back on the highway, did you? A. I imagine I didn't. Lots of people don't.

"Q. Had you looked in your mirror before coming out into the highway you could have seen these people approaching from the rear, couldn't you? A. Well, I might have.

"Q. But you just didn't look? A. But I couldn't have gone anywhere if I had.

"Q. Had you seen them coming from the rear on the highway, of course, you wouldn't have pulled out on the highway, would you? A. I guess I would have kept driving. I was just angling back. I didn't pull on the highway square.

"Q. But the truth of the matter is you didn't see them at all, did you? A. No, sir.

"Q. Yet the visibility was so you could see back there for a half mile? A. Yes, sir."

It is appellant's view that the evidence is insufficient to sustain a finding of trespass on the part of the driver of the panel truck; that if the evidence is viewed in the light most favorable to appellee, it will sustain only a finding of a failure to keep a proper lookout; that it is certain that the evidence did not sustain a finding of trespass and at most the evidence tendered an issue that showed a mere omission on the part of the driver of the panel truck. Appellant relies on the case of Barron v. James, 145 Tex. 283, 198 S.W.2d 256, and Chiles v. Goswick, 148 Tex. 306, 225 S.W.2d 411; Jackson v. McClendon, Chief Justice, 143 Tex. 577, 187 S.W.2d 374; Eubanks v. Hopkins, Tex.Civ.App., 203 S.W.2d 277; and Whitson Food Products Co. v. McClung, Tex.Civ.App., 206 S.W.2d 659.

We do not believe that the cases cited and discussed by appellant are applicable and controlling to the factual situation here. We believe the above factual situation comes under the Uniform Act regulating traffic on highways passed by the 50th Leg., Acts 1947, p. 967, Chap. 421, codified as Art. 6701d, Vernon's Ann.Civ.Stats. Sec. 67 of that Act provides: "No person shall start a vehicle which is stopped, standing, or parked unless and until such movement can be made with safety." Sec. 143 provides: "(a) It is a misdemeanor for any person to violate any of the provisions of this Act unless such violation is by this Act or other law of this State declared to be a felony. (b) Every person convicted of a misdemeanor for a violation of any of the provisions of this Act for which another penalty is not provided shall be punished by a fine of not less than One ($1.00) Dollar nor more than Two Hundred ($200.00) Dollars."

We believe the testimony tendered is sufficient to support the implied finding of the trial court to the effect that the vehicle was standing on the side of the highway and that the driver did start and operate the car on to the highway before such movement could be made with safety. If we are right in the foregoing respect, then under the express provisions of Sec. 143, just above quoted, appellant's agent did commit a trespass in Johnson County, and the trial court did not err in holding that venue lay in the District Court of Johnson County. Such being our view, the judgment of the trial court is affirmed.

LESTER, C. J., took no part in the consideration and disposition of this case.