**SMITH et al. v. ROBERTS et al.**

No. 3148.

Court of Civil Appeals of Texas.

Waco.

March 4, 1954.

Witt, Terrell, Jones & Riley, Robert E. Cross, Fitzpatrick & Dunnam, Waco, for appellants.

Helm & Jones, Houston, Brown & Dickie, Gatesville, for appellees.

TIREY, Justice.

This is an appeal from an order entered in the District Court of Coryell County overruling defendants' pleas of privilege to be sued in McLennan County, the county of their residence. The cause was tried without the aid of a jury and there was no request for findings of fact and conclusions of law and none filed.

Appellants assail the judgment substantially on two points: (a) that there was no evidence of any affirmative act of negligence on the part of appellants' employee that proximately caused the injuries and damages of which appellees complain; (b) that the evidence is insufficient for the court to find from a preponderance thereof any affirmative act of negligence on the part of appellants' employee that proximately caused the injuries and damages of which appellees complain.

It is stipulated that William Scott Roberts was killed in the accident and that the plaintiffs named in the petition are the surviving widow, children and parents of William Scott Roberts; that the Buick automobile had been going in an easterly direction prior to the accident, and that the truck belonging to appellants was being operated by their employee in the course of his employment and was going in a westerly direction. It was admitted that the accident occurred in Coryell County on the 24th of April, 1953, about 9:45 P.M. on Highway 84 at a point about one mile east of Evant, and that such collision involved a Buick automobile and a truck operated by Eugene Walton.

This record indicates that there was one eye witness, namely the truck driver, but he was not tendered as a witness, nor made a party defendant, and it is not shown whether he is or is not now employed by the defendants, or available as a witness as would ordinarily impute testimony adverse to the defendants. Defendants offered no testimony.

According to the witness Bratton, the Sheriff of Hamilton County was at the scene of the accident when he arrived; that Mr. Gentry, a highway patrolman, arrived later, and a little later the witness Ferrell arrived. Mr. Gentry is no longer with the patrol service and is now living in the State of Oklahoma. Neither the Sheriff of Hamilton County nor the Sheriff of Coryell County were called as witnesses. It is stipulated that William Scott Roberts was killed in the accident, but it is not shown whether he was in the automobile prior to the accident, whether or not he was driving the automobile just prior to the accident, nor is it shown where his body was found.

Mr. Ferrell, a State Highway Patrolman, testified to the effect that he had been engaged in this service some six years and had been stationed at Gatesville for about two years, and had had training before he went in this service. He testified to the effect that he recalled the collision and that he went to the scene with the Sheriff of Coryell County; that it was his opinion that he reached there from thirty minutes to one hour after the accident happened. He identified several of the photographs as correctly reflecting the scene when he arrived. He said the truck was facing north, and mainly on the north side of the highway, with the front end off of the pavement. The Buick automobile was west of the truck in the bar ditch on the north side of the road, being the righthand side of the road for west bound traffic. He testified in part:

"Q. What did you see there with reference to skid marks and other evidence of

the collision? A. There was a skid mark across the center line, which crossed the center line, starting at the center line across from the south side that led to the truck, that led to the direction of the truck. The scar or mark on the pavement of the highway.

"Q. Where was that? A. On the north side of the highway; I couldn't be certain,—I believe some two and a half or three feet north of the center line.

"Q. What was the situation with respect to the front wheels of the truck? A. The front wheels were out in the bar ditch near the fence.

"Q. On which side? A. Completely loose from the truck, on the north side.

"Q. I show you a photograph here and ask if you can recognize that and if so what it is? A. I believe this is a picture of the scene.

"Q. Which direction is the camera looking, toward Gatesville or Evant? A. It would be looking toward Evant. It would be looking toward Gatesville here.

"Q. Are the marks shown on that, the marks you saw on the highway? A. I believe they are.

"Q. Which side of the highway? A. On the north side.

"(Mr. Riley: We request that he identify the picture and give us an opportunity to object before * * *

"The Court: I will let you examine it now.

"Mr. Riley: We ask that his previous testimony with reference to the picture and the location of the marks be stricken from the record because the picture has not been introduced.

"The Court: Sustain the objection.)" (The record fails to show that the court changed its ruling in this behalf; nor does it show any complaint made to such ruling). On cross-examination he testified in part:

"Q. Mr. Ferrell, there is a difference between this and the other picture you testified about, that you do not know whether this is the scene of the accident and you did not make the picture? A. I couldn't see any skid marks or anything on the other picture that I could remember.

"Q. Here is just a stretch of highway, and you did not make this picture, and are you willing to testify that is the particular highway in question? A. I believe I can identify it by the marks and scars on the pavement, yes. * * *

"Q. You do not know whether those marks had been there before the accident or were made after the accident before you got there? A. They appeared to be freshly made.

"Q. I am talking about from your own knowledge. There might have been an accident there thirty minutes before that? A. I believe if there had been an accident there thirty minutes prior to that time the debris from the highway would have been blown off by passing traffic. It was gravelly. * * *

"Q. Except that you are testifying on the trial of this case and are handed this picture you would not know at all on what part of your territory or where it is in your territory from a million other places? A. I believe I could recognize that from the scarred mark on the highway. * * *

Mr. Riley: Is the same thing true with reference to that picture, that you did not make it and all those questions that you answered, that you do not know when it was made? A. I did not make the pictures.

"Q. You do not know when they were made. A. No.

Mr. Riley: The same answers would be true as to the other pictures? A. These two, the answers would be the same, but as to one of the pictures the answer would be different. * * *

"Q. The skid marks and the scar that you saw was originally on the south side of

the highway, over to the left on the north side of the highway? A. No, the scar did (was) not.

"Q. The skid marks started on the south side of the highway? A. One skid mark did.

"Q. You of course do not know what left those skid marks, and whether they were there before or were made afterwards? A. No, sir, I did not see it made."

On re-direct examination he testified in part:

"Q. Did those marks you see in this photograph appear to be fresh? A. They did, sir."

The witness Bratton testified to the effect that he saw the vehicles that had been involved in the collision; that the truck was a 1½ ton Dodge truck and that the Buick was a 1952 model; that the Buick was completely off of the pavement over against the fence on the north side; that the truck was sitting diagonally across the highway with the front end extending just off of the pavement on the north side; that Plaintiffs' Exhibit P–1 accurately reflected the position of the truck at the time he arrived at the scene; that the truck was later removed by being drug across the south side into the bar ditch; that the front wheels were off of the truck at that time and it cut marks on the highway; that the position of the truck made it necessary for traffic to be directed around it both ways. He further testified to the effect that he did not see any skid marks on the road; that there was oil spilled upon the highway.

The pictures show Highway 84 to have two traffic lanes with a black stripe down the center of the paved portion. The north traffic lane is used by traffic moving west and the south for traffic moving in an easterly direction.

Exhibits P–3 and P–4 are pictures of the Buick car and each of these pictures shows much damage to the left front part of the Buick. The right front shade on the headlight appears to be intact. Exhibit P–2 shows a view of the left front side of the Buick, and the left front fender was completely demolished. P–1 shows the truck diagonally across the highway with the front wheels off and the front end resting a little north of the paved portion and the rear wheels intact and resting in a diagonal position south of the center stripe and in the south or east traffic lane. We are unable to identify skid marks on the highway testified to by the witness Ferrell. There is a spot in the south traffic lane a little nearer the center stripe than the south boundary line of the pavement and then some spots in the north traffic lane, but these look like oil spots. We cannot trace or identify the skid marks testified to by Ferrell; nor can we locate the scar.

The record is silent as to the speed of the Buick automobile and its location immediately before and at the time of the collision. As we understand the witness Ferrell, none of the skid marks were made by the Buick car and the skid marks that he testified to were, in his opinion, made by the truck, and that one of these skid marks made by the truck started south of the center line. He did not give any opinion as to which wheel or wheels of the truck made the skid marks he saw.

Although the court made no findings of fact and conclusions of law, we do find in the Statement of Facts the statement he made after the evidence was closed and after argument of counsel: "The Court: Thank you, gentlemen, I think I understand the positions of both of you. The evidence is not as clear as the court would like to have it and either way I decide this I am sure the opposing counsel will want the higher court to pass upon it. Fortunately you can have a decision on the question of the pleas of privilege by the Court of Civil Appeals before I can try this case. You can take the matter up and have it reviewed. I am not absolutely sure that I am right. I am persuaded perhaps that the venue lies here in this county. I believe that the evidence is sufficient to warrant the conclusion by the court that the truck was on the wrong side and that there was a trespass committed within the meaning of the law. I will overrule your

plea of privilege and note your notice of appeal."

Appellees had the burden of pleading and proving that an affirmative act of negligence was committed by the truck driver in Coryell County. See Page v. Kilgore, Tex.Civ.App., 181 S.W.2d 730, points 3 and 5; also Barron v. James, 145 Tex. 283, 198 S.W.2d 256, points 7–8. The sole question here is: Did the appellees carry this burden in adducing their proof? See Gann v. Murray, Tex.Sup., 246 S.W.2d 616; Thompson v. Elder, Tex.Civ.App., 263 S.W.2d 321. Our view is that they did not.

Under this record it is our duty to presume that all fact findings and fact inferences having support in the evidence were found in favor of the judgment by the trial court, and further it is our duty to consider only the evidence which tends to support the judgment and to disregard all evidence to the contrary. See Gorbett Bros. Welding Co. v. Malone, Tex.Civ.App., 254 S.W.2d 848, points 1 and 2. We must also follow our Supreme Court in Mercer v. McCurley, 142 Tex. 197, 176 S.W.2d 923, point page 924, wherein it said: " 'To deprive a person of the right of trial in the county of his domicile, the case filed against him must clearly come within one of the exceptions found in the statutes.' " Moreover, we must keep in mind that we cannot set the judgment of the trial court aside, " * * * If there is any evidence of a probative nature to support it and that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings." See Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, 977; Woodward v. Ortiz, Tex.Sup., 237 S.W.2d 286; also cases cited in 4 Tex.Dig., Appeal and Error,

Since the trial court was of the view that the skid marks were made by the truck, he would have to assume that they were made when the truck driver applied his brakes, unless he was of the view that the marks were made by the truck after the impact or after the front wheels were knocked loose from the truck and that the marks were made by the sliding of the truck. Whether the truck driver applied his brakes, if he did, before or at the time of the impact is not shown. Moreover, the position and location of the truck is not shown (immediately before or at the time of the impact) by the evidence nor by the facts and circumstances because under Ferrell's testimony one skid mark started to the south of the center stripe, and if that skid mark had been made by the left front wheel, the position of the truck would have been at that time within its traffic lane. Can the trial court under all the facts and circumstances presume that the truck driver negligently pulled his truck to his left and into the traffic lane provided for traffic moving in the opposite direction and in front of the Buick car before he applied his brakes and before the impact without further presuming that the Buick car was proceeding at a lawful rate of speed and in the traffic lane provided for traffic moving in a westerly direction? Our view is that before the court could overrule the pleas of privilege here filed that it was necessary for him to presume that the Buick car was operated in the traffic lane provided for traffic moving in a westerly direction immediately before the impact, and must further presume that the operator of the truck operated it to his left and into the traffic lane in front of the Buick car before the impact, and further presume that under all the facts and circumstances that the truck driver was guilty of active negligence in pulling his truck to the left, and that such findings and conclusions bring him within the rule that you cannot build one presumption upon another presumption. See Chiles v. Goswick, 148 Tex. 306, 225 S.W.2d 411, points 2 and 3. See also Gunstream v. Oil Well Remedial Service, Tex.Civ.App., 233 S.W.2d 897.

Our view of the record here is that it shows an automobile collision, unexplained, in Coryell County, resulting in the death

920

of Mr. Roberts. Being of this view, we think the court erred in overruling defendants' pleas of privilege.

Accordingly, under Rule 89, Texas Rules of Civil Procedure, the judgment of the trial court is reversed and here rendered and the cause ordered transferred to the District Court of McLennan County, Texas.